**MONTGOMERY INDEPENDENT SCHOOL DISTRICT, Relator,**

v.

**Crawford MARTIN, Attorney General of Texas, Respondent.**

No. B–2571.

Supreme Court of Texas.

March 10, 1971.

Rehearing Denied April 7, 1971.

Vinson, Elkins, Searls & Smith, Donald L. Howell, Houston, for relator.

Crawford Martin, Atty. Gen., Joseph H. Sharpley, Asst. Atty. Gen., Austin, for respondent.

POPE, Justice.

Montgomery Independent School District seeks a writ of mandamus directing the Attorney General of Texas to approve an issue of $450,000 of the District's Unlimited Tax Schoolhouse Bonds, Series 1970. The Attorney General says that the reason for refusing to approve the issue is that the bond election did not result in the necessary majority vote. The School District contends that portions of Article VI and Article VII of the Texas Constitution, Vernon's Ann.St., as well as Section 20.04 of the Texas Education Code violate the

equal protection clause of the Fourteenth Amendment and are unconstitutional. The basis for this contention is that those provisions of the law limit the voting rights to electors who are property owners who have rendered their property for taxes.

The bond election occurred on October 17, 1970, and it concerned bonds which would be paid from the levy of ad valorem taxes. Because of some uncertainty in the law concerning voter qualifications, two separate but simultaneous elections were conducted. At one election the only persons permitted to vote were the qualified electors of the District who owned taxable property in the District and who had duly rendered their property for taxation. Those voters rejected the bond issue. At the other election all other qualified resident voters of the District were permitted to vote, and those voters approved the bond issue. The majority of the voters in both elections, when counted together, also approved the bond issue. The School Board adopted an order declaring that the election resulted favorably to the issuance of the bonds, and on December 18, 1970, authorized the issuance of the bonds and levied an ad valorem tax.

The Attorney General says that the provisions of Article VI, Section 3a, and Article VII, Section 3, of the Texas Constitution, as well as Section 20.04 of the Texas Education Code, compel the disapproval of the issuance. The School District does not dispute this, but it urges that we should strike down those provisions as unconstitutionally selective in authorizing voting rights. The relevant portions of the Constitution and the Texas Education Code are:

Section 3a, Art. VI, Texas Constitution: When an election is held by any county, or any number of counties, or any political sub-division of the State, or any political sub-division of a county, or any defined district now or hereafter to be described and defined within the State and which may or may not include towns, villages or municipal corpora-

tions, or any city, town or village, for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, *only qualified electors who own taxable property in the State, county, political sub-division, district, city, town or village where such election is held, and who have duly rendered the same for taxation, shall be qualified to vote* and all electors shall vote in the election precinct of their residence.

Section 3, Art. VII, Texas Constitution, authorizes the levy and collection of ad valorem taxes, within limits, with this proviso: *"provided that a majority of the qualified property tax-paying voters of the district voting at an election to be held for that purpose shall vote such tax * * *."*

Section 20.04(a), Texas Education Code: No such bonds shall be issued and none of the aforesaid taxes shall be levied unless authorized by a *majority of the resident, qualified electors of the district, who own taxable property therein and who have duly rendered the same for taxation,* voting at an election held for such purpose, at the expense of the district, in accordance with the Texas Election Code, except as hereinafter provided. (Emphasis added)

Several recent decisions of the United States Supreme Court have invalidated state laws which selectively grant the right to vote and have held those laws violative of the equal protection clause of the Fourteenth Amendment. The court struck down a New York statute which granted the right to vote in a school district election only to those who owned or leased taxable real property in the district or were parents or custodians of children enrolled in the public schools. Kramer v. Union Free School District No. 15, 395 U. S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). The same day the court decided *Kramer,* it also handed down Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969). The court

held a Louisiana statute unconstitutional because it permitted only property owners to vote on the question of approving bonds that were to be financed exclusively from the revenues of a municipal public utility. In Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), an Arizona constitutional limitation of the franchise in bond authorization elections to persons who are qualified electors and also real property taxpayers was held to be a violation of the equal protection clause.

These precedents constitute the framework for the School District's contention that the Texas constitutional and statutory limitations upon voting rights in a school bond election are also violative of the Fourteenth Amendment. There are significant differences between the three cases cited above and this case. In *Cipriano,* the court held that ownership of property was a restriction which was irrelevant to an election for the approval of bonds that would be financed by revenues of a public utility and not by taxation of property. The case before us does not concern revenue bonds. In *Kramer* and *Kolodziejski,* only persons who were real property taxpayers were permitted to vote. The Texas law does not restrict voting rights to owners of real property.

One other case needs discussion. The United States District Court for the Eastern District of Louisiana struck down Louisiana statutes which restricted eligibility to vote in bond elections to property taxpayers and also weighed each elector's vote by the monetary value of his assessed property. Stewart v. Parish School Bd. of Parish of St. Charles, 310 F.Supp. 1172 (E.D.La.1970), aff'd mem., 400 U.S. 884, 27 L.Ed.2d 129, 91 S.Ct. 136. The court said that the affluence of the voter was not such a compelling state interest as to justify the denial of the vote to some and the dilution of the votes of the majority. We do not have that problem in this case. The weight and force of the vote of the Texas elector who owns a bicycle is no different from that of the elector who owns a herd of cattle. It is immaterial to the right to vote in a bond election whether one's ownership of property be great or small. DuBose v. Ainsworth, 139 S.W.2d 307 (Tex.Civ.App.1940, writ dis.).

The provisions of the Texas Constitution and the Education Code, quoted above, show that the citizens of the Montgomery Independent School District had the right to vote if they owned any kind of property. Article 7145, Vernon's Tex.Civ.Stat. provides: "All property, real, personal or mixed, except such as may be hereinafter expressly exempted, is subject to taxation, and the same shall be rendered and listed as herein prescribed." Unlike those restrictive voting laws which have been declared unconstitutionally narrow and limited, the laws in Texas have consistently granted the right to vote in general obligation bond elections to all who own personal property as well as to those who own real property. Texas Public Utilities Corporation v. Holland, 123 S.W.2d 1028 (Tex. Civ.App.1939, writ dis.). In Handy v. Holman, 281 S.W.2d 356 (Tex.Civ.App. 1955, no writ), the right to vote of forty resident citizens was challenged because immediately before participating in a bond election, they had each rendered personal property valued at $100 for the very purpose of voting in a bond election. The court upheld their right to vote and also said that electors should not be "parsed" out of their constitutional right to vote by reason of any shortcoming in compliance with statutory requirements concerning the proper and timely rendition of personal property.

It is the contention of the Attorney General, and we agree, that voter qualifications of ownership under the Texas constitutional and statutory provisions stated above, as interpreted by our decisions, are so universal as to constitute no impediment to any elector who really desires to vote in a bond election. A voter is qualified if he renders any kind of property of any value, and he need not have actually paid the tax.

■ The quoted provisions of the Constitution and the Education Code requiring the property owner to duly render his property for taxation have been often construed by the Texas courts in connection with voting rights. Property is "duly rendered" within the meaning of the Texas Constitution if the property is placed on the tax rolls by the tax assessor instead of by the property owner, Texas Public Utilities Corporation v. Holland, supra, or by some other person such as a husband, partner, agent, or co-tenant and even though the owner's name may not appear on the tax rolls; Markowsky v. Newman, 134 Tex. 440, 136 S.W.2d 808 (1940); Royalty v. Nicholson, 411 S.W.2d 565 (Tex.Civ. App.1967, writ ref. n. r. e.); Lucchese v. Mauermann, 195 S.W.2d 422 (Tex.Civ. App.1946, writ ref. n. r. e.), cert. denied, 329 U.S. 812, 67 S.Ct. 633, 91 L.Ed. 693 (1947); Richter v. Martin, 342 S.W.2d 342 (Tex.Civ.App.1961, no writ); Campbell v. Wright, 95 S.W.2d 149 (Tex.Civ.App.1936, no writ); or when one makes his rendition out of time and for the very purpose of qualifying as a voter. Markowsky v. Newman, supra; Handy v. Holman, 281 S.W.2d 356 (Tex.Civ.App.1955, no writ).

It thus appears that those who own anything can vote in a bond election if they render their property; and they are deemed by the decisions of Texas to have rendered their property if they get their property on the rolls in any manner in advance of the election. In our opinion, the requirement that the voter in a general obligation bond election must get his property on the rolls is in the interest of sound government and affords equal treatment of all citizens. One who is willing to vote for and impose a tax on the property of another should be willing to assume his distributive share of the burden. This is the manner in which the Texas Constitution, as approved by the entire citizenry of the state, provides inducement for those who wish to participate in the decision making process in a School District to assume their rightful portion of the burden they help to create.

Personal property such as stocks, bonds, cash, automobiles, and livestock furnishes a great deal of the state's taxable property. No class of property is so susceptible to concealment and escape from taxation as personal property. The government faces unending problems in seeking to comply with the Constitutional mandate that, "Taxation shall be equal and uniform." Art. VIII, Sec. 1, Vernon's Texas Const. There may be other means to reach personal property, but experience has shown that every means must be pressed into service if the obligations of government are to be spread equally. This court articulated the correlation between the rights of citizenship and the obligations of citizenship in Markowsky v. Newman, 134 Tex. 440, 136 S.W.2d 808 (1940), when we said:

"* * * in determining the meaning, intent and purpose of a constitutional provision the history of the times out of which it grew and to which it may be rationally supposed to have direct relationship, the evils intended to be remedied and the good to be accomplished, are subjects of inquiry. * * *

* * * * * *

"It might be further safely said that the good sought to be accomplished by this amendment was to induce owners of property to place it upon the tax rolls and become liable for its pro rata share of the taxes levied and assessed by the municipality.

* * * * * *

"Moreover, it would be of great benefit to the taxing authorities to have such rendition of personal property, particularly where such property cannot be easily found by the city authorities."

To disclose one's share of the total burden for which he is responsible in a bond election requires no more than the law universally expects. To allow some property owners to vote in that kind of an election, and at the same time to permit them to avoid their fair share of the resulting obli-

gation, would confer preferential rights. This would be a denial of equal protection to another segment of citizens.

▉ In our opinion, the constitutional and statutory provisions concerning voter qualifications as consistently construed by Texas decisions, do not violate but strengthen the equal protection clause of the Fourteenth Amendment.

The writ of mandamus is denied.