Michael L. STONE et al., Plaintiffs,

v.

R. M. STOVALL, Mayor, et al.,
Defendants.

No. CA–4–1975.

United States District Court,
N. D. Texas,
Fort Worth Division.

March 25, 1974.

Probable Jurisdiction Noted Oct. 15, 1974.
See 95 S.Ct. 35.

Don Gladden and Marvin Collins, Greater Fort Worth Chapter of American Civil Liberties Union, Fort Worth, Tex., for plaintiffs.

S. G. Johndroe, City Atty., Fort Worth, Tex., Crawford Martin, Atty. Gen., Robert B. Davis, Asst. Atty. Gen., Austin, Tex., for defendants.

Before THORNBERRY, Circuit Judge, and BREWSTER and WOODWARD, District Judges.

## MEMORANDUM OPINION

THORNBERRY, Circuit Judge:

This class action challenges the constitutionality of state and city laws which restrict suffrage in bond elections to persons who have made available for taxation some item of real, personal, or mixed property.[1] We believe the defendants[2] have failed to demonstrate that this diminution of the electorate is necessary to promote a compelling state interest and therefore declare the provisions attacked to be in violation of the equal protection clause of the Fourteenth Amendment.

### I.

On April 11, 1972, the city of Fort Worth, Texas, held a bond election that submitted to the voting public two proposed bond issues, one for transportation bonds and one for library bonds. The voters approved the transportation bonds without incident, and the bonds have been sold. The library bonds were not so successful.

Under the laws of Texas[3] and the city charter of Fort Worth,[4] one must have some item of property on the tax rolls to be eligible to vote in a bond election. The property may be of any type—real, personal, or mixed. It can be of any

---

1. Since plaintiffs seek to enjoin the enforcement of a state statute on the grounds of its unconstitutionality, the jurisdiction of this three-judge court was properly invoked pursuant to 28 U.S.C. §§ 2281 and 2284. The case was tried upon stipulated facts.

2. Plaintiffs joined the state attorney general because Texas law requires that he certify the legal validity of cities' proposed bond issues. Vernon's Tex.Rev.Civ.Stat.Ann. art. 709d (Supp.1973). They ask that he be required to decide the bonds' validity without regard to the laws attacked here as unconstitutional.

3. § 3. Municipal elections; qualifications of voters
    Sec. 3. All qualified electors of the State, as herein described, who shall have resided for six months immediately preceding an election, within the limits of any city or corporate town, shall have the right to vote for Mayor and all other elective officers; but in all elections to determine expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town; provided, that no poll tax for the payment of debts thus incurred, shall be levied upon the persons debarred from voting in relation thereto.
    Vernon's Ann.St.Tex.Const. art. VI, § 3.
    § 3a. Bond issues; loans of credit; expenditures; assumption of debts; qualifications of voters
    Sec. 3a. When an election is held by any county, or any number of counties, or any political sub-division of the State, or any political sub-division of a county, or any defined district now or hereafter to be described and defined within the State and which may or may not include towns, villages or municipal corporations, or any city, town or village, for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, only qualified electors who own taxable property in the State, county, political sub-division, district, city, town or village where such election is held, and who have duly rendered the same for taxation, shall be qualified to vote and all electors shall vote in the election precinct of their residence.
    Tex.Const. art. VI, § 3a.
    Art. 5.03 Qualifications for voting for bond issues, lending credit, expending money, or assuming debt

value so long as it is not covered by an exemption.[5] One's eligibility depends

When an election is held by any county, or any number of counties, or any political subdivision of the state, or any political subdivision of a county or any defined district now or hereafter to be described and defined within the state, and which may or may not include towns, villages, or municipal corporations, or any city, town, or village, for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, only qualified electors who own taxable property in the state, county, political subdivision, district, city, town, or village where such election is held, and who have duly rendered the same for taxation, shall be qualified to vote and all electors shall vote in the election precinct of their residence. Property shall be deemed to have been duly rendered for taxation, for the purpose of determining eligibility to vote in an election as provided in this Code and in Article VI, Section 3a, of the Texas Constitution, only if the property was rendered to the county, city, district, or other political subdivision holding the election within the period of time fixed by law for such rendition, or was placed on the tax rolls by the tax assessor prior to the date on which the election was ordered, if the regular rendition period expired before that date.

Tex.Election Code Ann. art. 5.03, V.A.T.S. (Supp.1973).

Article 5.04 of the election code provides in part:

Art. 5.04 Affidavit of voter in bond election, etc.

(a) Before any person is allowed to vote in an election for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, he shall sign and swear to an affidavit to the effect that he owns property, giving a description of one item, which has been duly rendered for taxation to the political subdivision holding the election at a time and in a manner which entitles him to vote in the election, as provided in Section 35 (Article 5.03) of this code. The voter's registration certificate number shall be shown on the affidavit, and it shall contain a statement that the affiant understands that the giving of false information in the affidavit is a felony punishable by a fine not to exceed $5,000 or by imprisonment in the penitentiary not to exceed five years, or by both such fine and imprisonment.

Tex.Election Code Ann. art. 5.04(a) (Supp. 1973).

Art. 5.07 To vote in city elections

All qualified electors of this State, as described in the two preceding Sections [Arts. 5.05, 5.06] who shall have resided for six

upon his making the property available for taxation ("rendering" it), not upon

(6) months immediately preceding an election within the limits of any city or incorporated town shall have a right to vote for mayor and all other elective officers; but in all elections to determine the expenditure of money or assumption of debt, or issuance of bonds, only those shall be qualified to vote who own taxable property in the city or town where such election is held and who have duly rendered the same for taxation; and all electors shall vote in the election precinct of their residence.

Tex.Election Code Ann. art. 5.07 (1967).

4. The city charter provides, in pertinent part:

Section 19. Issuance and Sale of Bonds. —The City Council shall have authority to provide for the issuance and sale of bonds for permanent improvements and for any other legitimate municipal purpose as may be determined by the City Council; but no bonds shall be issued to fund any overdraft or indebtedness incurred for current expenses of the city government, or any subdivision thereof. The City Council shall also have the right to fund any maturing bonds by the issuance of new bonds in lieu thereof at the same or a lower rate of interest. No bonds shall be issued or refunded that bear a greater rate of interest than five per cent per annum, and the same shall never be sold for less than par and accrued interest, and all bonds shall express upon their face the purpose or purposes for which they are issued.

No bonds shall be issued unless authorized by ordinance, which ordinance shall provide an adequate fund from the taxes for the payment of the annual interest and sinking fund of not less than two per cent per annum for the ultimate redemption of such bond issue, and such ordinance shall become effective without the necessity of publication. *Provided, that no bonds shall be issued, nor bonded debt created, unless authority therefor shall first be submitted to the qualified voters who pay taxes on property situated within the corporate limits of the City of Fort Worth*; and, if a majority of the votes cast at such election are in favor of the issuance of such bonds, then such issue shall be made; but, should the majority of the votes cast at said election be against the proposition, then such bonds shall not be issued. . . . [Emphasis supplied.]

Charter of the City of Fort Worth, ch. 25, § 19.

5. In Texas, "[a]ll property, real, personal or mixed, except such as may be hereinafter expressly exempted, is subject to taxation, . . . ." Tex.Rev.Civ.Stat.Ann. art. 7145

paying the tax. In theory at least, one might gain eligibility by rendering his wrist watch, clothing, or any common item of personal property.

The Texas Supreme Court has held that the rendering requirement is constitutional. Montgomery Independent School District v. Martin, 464 S.W.2d 638 (Tex.1971). The U. S. Supreme Court, however, has held similar voting prerequisites unconstitutional.[6] To ensure the validity and marketability of the transportation and library bonds, should they be approved, the City of Fort Worth held two separate but simultaneous elections on April 11, 1972. This was done by separately tabulating the votes of those who owned taxable property in Fort Worth and had rendered it for taxation, and those who had not rendered property for taxation. Both groups, the renderers and the non-renderers, approved the transportation bonds by a majority vote. But the library bonds were given a mixed reception at the polls. A majority of the renderers rejected the proposal to issue library bonds, but the non-renderers approved it by a three-to-one margin. Adding together the votes of both groups showed that a majority of all the voters participating favored issuing the library bonds.[7] The net result was the library bonds could be sold only if the non-renderers were constitutionally entitled to vote despite the contrary Texas and Fort Worth laws. Convinced that the Texas rendering requirement was constitutionally valid, the city fathers of Fort Worth refused to sell the library bonds, precipitating this lawsuit.

■ The individual plaintiffs in this case seek to represent a class composed of all those who voted for Proposition Two, the library bonds. Having measured these representatives and their proposed class against the criteria of F. R.Civ.P. 23, we believe the class and representatives are proper. A total of 14,607 persons voted for Proposition No. 2, making the class too numerous for joinder of all. The class members have a common question of law: whether the provisions in question are consistent with the principles of equal protection. The claims of the representatives are identical with those of the class. The plaintiffs' excellent brief leaves no doubt that they will fairly and adequately protect the interests of the class. And the defendants have refused to act on grounds generally applicable to the class by blocking issuance of the bonds because existing law requires approval by a majority of the rendering property owners who cast ballots. Thus we conclude that this is a proper class action under F.R.Civ.P. 23(b)(2). Having established the plaintiffs' class character, we turn now to their grievance.

## II.

Plaintiffs' equal protection arguments are bottomed upon the theory that the state, through its rendering requirement, has divided its otherwise eligible voters into two classifications, one of

(1960). While all property is taxable unless exempt, the exemptions are numerous. *See, e. g.,* Tex.Rev.Civ.Stat.Ann. art. 7150 (1960). For the purposes of this lawsuit the most significant exemption is in § 11 of article 7150: "All household and kitchen furniture not exceeding at their true and full value two hundred and fifty dollars to each family, in which may be included one sewing machine." Tex.Rev.Civ.Stat.Ann. art. 7150(11) (1960).

6. City of Phoenix v. Kolodziejski, 1970, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523; Cipriano v. City of Houma, 1969, 395 U.S.

701, 89 S.Ct. 1897, 23 L.Ed.2d 647; Kramer v. Union Free School District, 1969, 395 U. S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583.

7. The election results were as follows:

| | Owners of Property Rendered for Taxation | Non Renderers | Total |
|---|---|---|---|
| **Proposition One** | | | |
| For | 13,466 | 4,094 | 17,560 |
| Against | 9,834 | 850 | 10,684 |
| **Proposition Two** | | | |
| For | 10,849 | 3,758 | 14,607 |
| Against | 12,234 | 1,132 | 13,366 |

which cannot vote in bond elections. We think this theory is correct.

■ Defendants appear to argue that the state has made no one ineligible to vote and thus has created no classifications. They say that since Texas law subjects *all* property to taxation, anyone who is willing to render his property may vote. Voters choosing not to render their property simply disenfranchise themselves.[8] Defendants' argument proves too much; it would also support a poll tax, a practice long since declared an impermissible burden on the right to vote. Harper v. Virginia State Board of Electors, 1966, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169. The poll tax, too, was a trivial financial requirement that virtually everyone could meet. It is sheer sophistry to say the classes create themselves, or that the voters disenfranchise themselves, when the state requires would-be voters to meet requirements entirely irrelevant to the needs of sound election administration or voter competence.

We might add that we suspect the Texas rendering requirement has created a class of citizens who own too little property to merit a vote in bond elections. The record fails to indicate the number of people who render for taxation personalty other than automobiles, but we doubt that many do. *Cf.* Stewart v. Parish School Board, E.D.La.1970, 310 F.Supp. 1172, aff'd mem., 400 U.S. 884, 91 S.Ct. 136, 27 L.Ed.2d 129. If, as

a practical matter, nonautomobile personalty virtually is never rendered, and rendering an item of property is a prerequisite to voting, then Texas has disenfranchised an indeterminate number of citizens who possess neither real estate nor car. Thus these laws on their face disenfranchise those who own property but do not render it, and in practice may well deny the ballot to a group of citizens whose possessions have been adjudged too meager.

### III.

■■ A brief survey of the relevant case law will place plaintiffs' case in perspective. We start with the proposition that the states have "broad powers to determine the conditions under which the right of suffrage may be exercised." Lassiter v. Northampton Election Board, 1959, 360 U.S. 45, 50, 79 S.Ct. 985, 989, 3 L.Ed.2d 1072. But "once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment." Harper v. Virginia Board of Elections, 1966, 383 U.S. 663, 665, 86 S.Ct. 1079, 1081, 16 L. Ed.2d 169. See Evans v. Cornman, 1970, 398 U.S. 419, 90 S.Ct. 1752, 26 L. Ed.2d 370. When a state excludes citizens from the electorate, it must justify the exclusion under the harsh "compelling state interest" test. Kramer v. Union Free School District, 1969, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583; Cip-

8. *Cf.* Rosario v. Rockefeller, 1973, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1. *Rosario* contains language that some might interpret to support the contention that nonrendering citizens are disenfranchising themselves, with no help from the state. In *Rosario* the plaintiffs challenged a New York law requiring those who wish to vote in a particular party primary to enroll in that party at least 30 days prior to the last general election preceding the primary. Plaintiffs claimed that those who failed to enroll in time, and thus were refused the right to vote in the primary, were being deprived of their right to equal protection. The Court rejected that contention, saying that if plaintiffs were disenfranchised, they had disenfranchised themselves by failing to enroll.

We believe *Rosario* is inapposite. New York's enrollment requirement was a reasonable state effort to preserve the integrity of the electoral process, a goal the Court called "legitimate and valid." The Texas rendering requirement, by contrast, is primarily an attempt to aid the state's taxation efforts, and is not designed to protect or improve the electoral process. Party enrollment, like registration, is an integral part of elections, and the state is fully justified in setting deadlines and cutoff dates necessary to administrate the electoral process. And an unavoidable concomitant of registration and enrollment is voluntary action by the individual voter. One cannot argue that voluntary submission to taxation is necessary to the administration of elections.

riano v. City of Houma, 1969, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647; City of Phoenix v. Kolodziejski, 1970, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523; Dunn v. Blumstein, 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274. The test has two steps: (1) whether the exclusions are necessary to promote the state's articulated interest and (2) whether the interest is compelling. *Kramer, supra.* To qualify as necessary, exclusions must be tailored with precision. *E. g.,* Dunn v. Blumstein, *supra.* And the state must pursue its compelling interest in the way that burdens constitutionally protected activity least. *Id.*

### IV.

Defendants advance two state interests that are served by excluding non-renderers from bond elections. The first interest is limiting the ballot to those who have a financial stake in the election's outcome. This interest is based on notions of fairness: those whose taxes will service the bonds should be the only ones deciding whether the debt is worth undertaking. To permit non-renderers a "free ride," we are told, would be tantamount to depriving the renderers of their property without due process, and would at least constitute preferential treatment.

The other (and primary) interest advanced is the necessity of encouraging the citizens to render their property so that the public treasury will be fortified by an efficiently collected property tax. *See* Montgomery Independent School District v. Martin, 464 S.W.2d 638 (Tex. 1971); Markowsky v. Newman, 134 Tex. 440, 136 S.W.2d 808 (1940). We shall subject these state interests to close judicial scrutiny and the compelling interest test.

We examine first the state's interest in limiting the electorate to those who will be primarily affected by its outcome, i. e., those who will pay the financial obligation created by the bonds. Defendants' argument is strengthened by the fact that the City of Fort Worth intends to issue general obligation bonds, not revenue bonds. Revenue bonds are serviced by the income from the enterprise they finance. General obligation bonds are serviced by general tax revenues. In this case the parties have stipulated that the proposed library bonds' principal and interest will be paid from taxes on real, personal, and mixed property rendered by the city's taxpayers. Thus the impact on property owners is significantly greater than it was in similar cases decided by the Supreme Court. For example, in City of Phoenix v. Kolodziejski, 1970, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523, more than half of the debt service requirements were to be satisfied from taxes paid by nonproperty owners. By contrast, the Fort Worth library bonds will be serviced entirely by property taxes.

Despite the proposed bonds' direct impact on renderers, we are reluctant to say the state has a compelling interest in confining the electorate to the current rendering property owners. *See* Stewart v. Parish School Board, E.D.La.1970, 310 F.Supp. 1172, 1181. The Supreme Court has reserved judgment on whether such a goal is permissible, let alone of compelling importance.[9] Kramer v. Union Free School District, 1969, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583; Cipriano v. City of Houma, 1969, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647. And the fact that the *Kramer* Court put other interests in the election's outcome on a par with the taxpayers' obligation to pay indicates that financial stake alone

9. *But cf.* Salyer Land Co. v. Tulare Lake Basin Water Storage District, 1973, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659. In that case the Court approved an election in which the right to vote for directors of a water district was limited to landowners and apportioned according to the extent of the voter's holdings. The case is distinguishable because the Court emphasized that a water district is a governmental unit with a special limited purpose and a limited scope of authority. Therefore, the "one person, one vote" principle did not apply. It is inescapable that that principle does apply to the City of Fort Worth, a unit of local government exercising general governmental power.

cannot be considered a compelling interest. *See* Comment, The Supreme Court 1968 Term, 83 Harv.L.Rev. 7, 80 (1969). Since the compelling qualities of this state interest are much in doubt, we will pretermit the question and answer the easier inquiry of whether it is necessary to exclude non-renderers from the electorate in order to achieve the goal of confining bond election suffrage to those who will pay the debt created.

Close judicial scrutiny reveals that Texas' classification is too imprecise to withstand an equal protection attack. It presumes that only those who render property will pay for the bonds approved. In reality, at least some of the renderers will pass on to non-renderers their portion of the bonds' cost. The property tax paid by a business establishment, for example, is sure to be passed on to customers in the form of higher prices. By patronizing the business the purchaser pays for a small part of the bonds. Yet Texas would exclude him from the bond election. The same is true of the non-renderer who rents an apartment or house. His rent pays the landlord's property taxes, which in turn service the bonds.

Moreover, Texas assumes that because a citizen is a non-renderer on election day he will never render property and thus never help pay for the bonds approved. Such an outlook is myopic, for bonds can represent long term financial obligations. For example, Fort Worth's proposed library bonds would not be completely retired for forty years. In a society where upward mobility is commonplace, it is untenable to assume that because on election day one has rendered no property, perhaps because he owns nothing worth rendering, he will pay no property taxes for the next forty years. Today's renter may purchase a home tomorrow, and with the house will come property taxes and his share of the city's bonded debt. By the same token it is by no means certain that one who is a rendering property owner on election day will maintain that status for the bonds' life.

Since Texas' classificatory scheme fails to enfranchise all of those who will pay the bonds' cost, we conclude that the renderer/non-renderer classifications are too imprecisely drawn to further the state's articulated interest and hence cannot be termed "necessary." Consequently, even if the interest in limiting the ballot to those who will pay for the bonds is compelling, it will not justify the laws challenged here. We note in passing that Texas could pursue this same interest just as easily by broadening the tax base instead of narrowing the franchise.

The other state interest advanced to justify disenfranchising Texas' non-renderers is maintaining a credible penalty that will encourage voluntary rendering, which in turn enriches the state and city treasuries. This argument contends that some coercive threat is necessary to force the citizens to reveal their easily concealed personalty to the tax assessor. If we do not tie rendering to the right to vote, the citizens will hide their personalty and property tax collection will become a very expensive, if not impossible, proposition.

Again we apply the compelling state interest test, this time asking whether the Texas disenfranchisement scheme is necessary to the state's goal of taxing personalty and enriching the fisc. After examining the defendants' argument in support of the necessity for thus limiting the franchise, we find it has several fatal flaws.

Defendants' concern with the concealability of personalty assumes that a substantial amount of property tax revenue comes from personalty other than automobiles. Autos are scarcely concealable; after all, they must be registered with the state. The record, however, does not disclose the amount of non-automobile personal property tax revenue, and we think it unlikely that the amount is great.

A second problem is that the laws appear poorly designed to achieve their purpose of bringing in revenue. One can vote without rendering *all* his prop-

erty. In fact, he must render only one item. Tex.Election Code Ann. art. 5.-04(a) (Supp.1973). *See* Note, 49 Texas L.Rev. 1113, 1118 (1971). And in Montgomery Independent School District v. Martin, 464 S.W.2d 638 (Tex.1971) the Texas Supreme Court emphasized that one may vote if he renders property of any value. No piece of property is too insignificant or worthless. If disenfranchisement can be avoided by rendering only a small portion of one's property, and a nearly valueless portion at that, how does the state further its interest in protecting the fisc?[10] *See* Turner v. Fouche, 1970, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 5671.

Third, we cannot believe that without the disenfranchisement device Texas will be unable to collect property taxes. At least thirty-six states have found workable alternatives, for they permit all qualified voters to vote in general bond elections. City of Phoenix v. Kolodziejski, 1970, 399 U.S. 204, 90 S.Ct. 1990, 26 L. Ed.2d 523; Stewart v. Parish School Board, E.D.La.1970, 310 F.Supp. 1172, n. 1. The Supreme Court has said that those thirty-six states "do not appear to have been significantly less successful in protecting property values and in soundly financing their municipal improvements." City of Phoenix v. Kolodziejski, *supra* at 399 U.S. 214, 90 S.Ct. 1996. The differing practice in those states convinces us that Texas can find an alternative tax collection device, and that disenfranchisement is not necessary to the furtherance of Texas' interest in efficient property taxation.[11]

Since we have decided that the rendering requirement cannot be called neces-

sary, we need not resolve the question whether property tax collection is a compelling state interest. We simply note in passing that tax collection, while unquestionably important, probably lacks compelling importance in the context of voting rights because it is irrelevant to the electoral process. Certainly a state could not justify a poll tax on the ground that the treasury was low. *Cf.* Harper v. Virginia State Board of Elections, 1966, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169; United States v. Texas, W.D.Tex.1966, 252 F.Supp. 234, aff'd mem. 384 U.S. 155, 86 S.Ct. 1383, 16 L. Ed.2d 434.

To summarize, today we hold that Texas and Fort Worth unconstitutionally have impeded their citizens' right to vote by disenfranchising those who have failed to render property for taxation. The laws in question violate the Constitution's equal protection clause by restricting the electorate when less constitutionally burdensome avenues are available for pursuing the state's articulated interests. They further violate the citizens' right to equal protection of the laws by creating imprecisely drawn classifications which do not achieve the state's desired goals. Therefore we grant the declaratory and injunctive relief necessary to ensure that all the qualified voters in Texas will be able to vote in future bond elections regardless of whether they have rendered property for taxation. Our decree shall also require the defendants to consider Fort Worth's proposed library bonds as approved by the voters participating in the election of April 11, 1972.

---

10. The ease with which citizens may meet Texas' rendering requirements does not buttress the defendants' argument that plaintiffs have not suffered discrimination. The Supreme Court has said:

To introduce wealth or payment of a fee as a measure of a voter's qualifications is to introduce a capricious or irrelevant factor. The degree of the discrimination is irrelevant.

Harper v. Virginia State Board of Electors, 1966, 383 U.S. 663, 668, 86 S.Ct. 1079, 1082, 16 L.Ed.2d 169.

11. *Cf.* Dunn v. Blumstein, 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274.

Statutes affecting constitutional rights must be drawn with "precision," . . . and must be "tailored" to serve their legitimate objectives. . . . And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose "less drastic means." [Citations omitted.] 405 U.S. at 343, 92 S.Ct. at 1003.

With the exception of that election, we shall order prospective relief only. We recognize that many communities have relied on the Texas law and have approved or disapproved bonds in elections that excluded the votes of citizens not rendering property for taxation. It would not be in the public interest to disrupt the orderly processes of government by upsetting past elections.

## JUDGMENT

This cause having come on for trial at which all parties were present by counsel; and the Court having considered the pleadings, evidence and argument of counsel and being of the view that a decree should be entered in accordance with the opinion of the Court, which also constitutes the Court's findings of fact and conclusions of law under F.R. Civ.P. 52(a), filed this date, it is therefore ordered, adjudged and decreed:

First. That the individually named plaintiffs in this action represent a class of plaintiffs composed of all those casting ballots in favor of Proposition Two in the election held by the City of Fort Worth on April 11, 1972.

Second. That Article VI, Section 3 and Section 3a of the Texas Constitution, Articles 5.03, 5.04, and 5.07 of the Texas Election Code, and Section 19, Chapter 25, of the Fort Worth City Charter are hereby declared unconstitutional insofar as they condition the right to vote in bond elections on citizens' rendering property for taxation.

Third. The defendants herein, their respective agents, servants, employees and successors, are hereby enjoined and prohibited from giving any force or effect to the laws named in paragraph second, insofar as they are now constitutionally invalid, in assessing the validity of votes case in Fort Worth's April 11, 1972, election by persons who had not rendered taxable property in such City for taxation. The defendants shall consider Proposition Two (library bonds) to have been approved by the voters participating in that election. This shall not be construed as compelling the issuance of such bonds by the City of Fort Worth.

Fourth. The defendants herein, their respective agents, servants, employees and successors, are hereby enjoined and prohibited from giving any force or effect to the laws named in paragraph second in any bond election held from this date on, insofar as those laws require citizens to render taxable property in such City for taxation as a prerequisite to voting.

Fifth. This decree is intended in no way to render invalid bond elections already held or bonds already issued.

Sixth. This judgment shall be stayed for the period of ten days to enable the parties to submit an application for stay to the Circuit Justice, the Supreme Court, or a Justice thereof.

WOODWARD, District Judge (specially concurring):

I concur with the result reached in Judge Thornberry's Memorandum Opinion. My concurrence is based upon the teachings of Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S. Ct. 1079, 16 L.Ed.2d 169 (1966). The requirement that a person render property for taxation is tantamount to a requirement that a person own property before he may vote in an election authorizing the issuance of tax bonds. The ownership of property, like race, creed or color, has no relationship to one's ability to participate intelligently in the electoral processes, and a State may only limit the eligibility requirements of voters to those factors which would affect a citizen's ability to intelligently cast his vote. The defendants here, however, have attempted to limit participation in the election in question to those citizens who own property. Further, the challenged laws place the same limitations on other elections. The defendants, therefore, have exceeded the powers rightfully belonging to a state or any political subdivision thereof and it is my opinion that the statutes and ordinances in question have been properly held unconstitutional.

BREWSTER, District Judge (concurring in result).

I reluctantly concur only in the *judgment* now being entered herein because I am unable to see a substantial distinction between this case on the one hand and City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), on the other. My oath of office binds me to follow the decisions of the Supreme Court of the United States, whether I agree with them or not.

My own views regarding the constitutionality of the restrictions on voting here involved are the same as those expressed in the dissenting opinions in Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), and City of Phoenix v. Kolodziejski, supra. As Chief Justice Burger says in the Dunn case, 405 U.S., at 363, 92 S.Ct., at 1013, 31 L.Ed.2d, at 296, the compelling state interest test, as recently applied by the Supreme Court has created a "seemingly insurmountable standard" which "demands nothing less than perfection." My feelings about the restrictions on voting imposed by the provisions of the state constitution and statutes and the city ordinance here involved coincide with those of Mr. Justice Stewart in regard to similar Arizona statutory restrictions, as expressed in the following quotation from his dissenting opinion in City of Phoenix v. Kolodziejski, supra, 399 U.S., at 218, 90 S.Ct., at 1998, 26 L.Ed.2d, at 533:

"This is not the invidious discrimination that the Equal Protection Clause condemns, but an entirely rational public policy. . . ."

I do not agree with the reasoning of the Memorandum Opinion, but will not engage in a useless, lengthy discussion of it. However, I do feel compelled to make a few brief observations about matters in it.

There is language in the memorandum opinion which might be construed by a person not familiar with the record as indicating that the question before us is whether a restriction on voting based solely on rendition of property is constitutional. The provisions of the state constitution here involved say that the only qualified electors in bond elections are persons "who own *taxable* property" in the political subdivision where such election is held, "and who have duly rendered the same for taxation."[1] The statute and the ordinance in question are to the same effect. If only rendition of some property, whether taxable or not, were required, my views about the kind of judgment to be entered would be different.

The memorandum opinion says that most automobiles and personal property are not rendered for taxation. I regard that as totally irrelevant. If it were pertinent, a look at the sworn statement of those who render their property for taxation might show that a good deal of personal property is rendered.

Finally, as I construe it, the memorandum opinion is calculated to leave the inference that most of the people who would be affected by the exclusion are those who have personal property but do not render it for taxation because nobody else does, and those who, though ambitious to make their own way, own "nothing worth rendering" today, but, being members of "a society where upward mobility is commonplace", will become substantial taxpayers tomorrow. My humble feeling is that most of those excluded will more likely be the kind who are able to earn their way but would rather live off other peoples' work. It would be safe to say that the exclusion would get everyone of the kind of people we know, as a matter of general knowledge, are in line for the food that is being handed out by Publisher Hearst as a ransom to try to secure the release of his kidnapped daughter, and who are griping about the quality of food they are getting. My feeling is that those irresponsible people should

---

1. The quotations are from Art. VI., Sec. 3a, of the Constitution of Texas.

not be allowed to vote to slap a lien on the property of someone else.

I deeply regret that I have been unable to find a legitimate way to distinguish the cases above cited.