### Ex parte SOUTHLAND INDEPENDENT SCHOOL DISTRICT.

#### No. 8515.

Court of Civil Appeals of Texas, Amarillo.

Dec. 16, 1974.

Rehearing Denied Jan. 20, 1975.

Second Rehearing Denied Feb. 10, 1975.

Griffith & Brister, Thomas J. Griffith, Lubbock, for appellants.

Brown & Harding, Derry D. Harding, Lubbock, Pat N. Walker, Post, for appellee.

REYNOLDS, Justice.

Responsive to one suit to void, and another suit to validate, a school district maintenance tax and bond election and the issuance of bonds ordered pursuant thereto, the trial court entered judgment decreeing the validity of the election and the resulting authorization of the maintenance tax to be levied and the bonds to be issued, and enjoined further contests thereto. Affirmed.

The Board of Trustees of the Southland Independent School District, composed of territory lying in Garza, Lynn and Lubbock Counties, ordered a maintenance tax and general obligation bond election. The submitted propositions were whether the board of trustees should be authorized and empowered to levy and cause to be assessed and collected ad valorem taxes not to exceed $1.50 on the $100 valuation of taxable property in the district and to issue bonds to the amount of $500,000 for school building purposes.

Two separate ballot boxes were provided for the election. In one ballot box were deposited the ballots cast by the qualified resident electors whose property had been duly rendered for taxation. Placed in the other box were ballots voted by the qualified resident electors who did not own property which had been rendered for taxation.

The canvass of the returns established that the maintenance tax proposition was approved 84 to 68 by the taxpaying electors, approved 11 to 6 by the other electors, and approved 95 to 74 by all voting electors. The bond proposition was approved 81 to 65 by the taxpaying electors, approved 13 to 4 by the other electors, and approved 94 to 69 by all voting electors. The board of trustees then levied a maintenance tax and ordered the issuance of bonds in the principal amount of $500,000.

Thereafter, R. H. Lewis, a school district resident taxpayer, J. Martin Basinger, a non-resident school district taxpayer, and seven others whose residences are not shown, but all nine of whom owned taxable property within the boundaries of the school district and purported to represent all property owners of the district, filed Cause No. 2996 in the District Court of Garza County to enjoin the issuance of the bonds and to secure a declaratory judgment decreeing the election null and void, together with ancilliary relief flowing therefrom. The school district then filed in Cause No. 3018 in the same court the in rem action authorized by Vernon's Ann. Civ.St. art. 717m for a declaratory judgment validating and confirming not only the bonds to be issued, but all antecedent proceedings as well as those actions proposed to be taken. The two suits were consolidated for disposition under Cause No. 3018 styled Ex Parte Southland Independent School District.

A number of facts were stipulated by the parties. Among them was the stipulation that twenty-six named persons were non-residents of the district who owned rendered taxable property in the district and who did not present themselves at the polls to vote in the election but who, had they presented themselves to vote, would have been denied a ballot and who, had they voted, would have voted against the propositions. There also was the stipulation that the minutes of the board of trustees attached to the school district's pleadings are true and correct. The attached minutes record events and actions taken preceding and subsequent to the election.

Included in the minutes is the finding by the board that the total valuation of all taxable property in the district rendered for the year 1973 is $18,349,686, to which is attached a statement by the assessor and collector of taxes that the $18,349,686 assessed value of property for taxation is shown by the 1973 tax rolls which have been duly approved. The outstanding bonded indebtedness was shown to be $4,000.

Three special issues were submitted to a jury. Answering the submission, the jury found that (1) qualified voters residing outside the school district who owned and rendered for taxation property within the district were persons interested in the affairs of the district; and (2) the advertisements in support of the bond issue were false, (3) but were not relied upon by any voters participating in the election.

Following motions for judgment, the court entered judgment declaring by enumeration, inter alia, that (2) the election was in all respects duly called, conducted and held in compliance with the constitution and laws of Texas and the United States; (3) as a result of the election, the board of trustees is duly authorized and empowered to levy and cause to be assessed and collected annual ad valorem taxes for the maintenance of a public free school at a rate not to exceed $1.50 on the $100 valuation of taxable property in the district, and (4) to issue bonds of the district to the amount of $500,000 for school building purposes; (5) the bonds when sold and delivered in compliance with the law will constitute legal, valid and binding special obligations of the district; and that (7) the judgment is forever binding and conclusive against all parties to this suit or affected thereby and shall constitute a permanent injunction against the institution by any person of any action or proceeding contesting the validity of the election, the maintenance tax or the issuance of the bonds resulting therefrom, provided that the aggregate bonded indebtedness of the district, including the bonds

being issued, does not exceed ten (10%) per cent of the assessed valuation of the taxable property in the district according to the then last completed and approved ad valorem tax rolls.

Utilizing four points of error with some subdivisions, appellants attack the judgment on three basic propositions. Points one and three propose that the judgment is erroneous in decreeing the election valid because Texas has no valid constitutional or statutory provision under which the election can be held; point two is the proposition that appellants were entitled to judgment because Article 717m, V.A.C.S., is unconstitutional; and point four is the assertion that the court erred in holding the 1973 tax roll to be the last approved tax roll when the last approved tax roll was the one for 1972 in the amount of $4,856,070, rendering a $500,000 bond issue excessive and void.

Appellants contend that, at least since the June 23, 1970 decision in City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), Texas has no valid constitutional or statutory provision under which a school district maintenance tax and bond election can be held because Sections 3 and 3–a of Article 6 of the Texas Constitution, Vernon's Ann.St., and Articles 5.03, 5.04 and 5.07 of the Texas Election Code, V.A.T.S., are unconstitutional. It is observed that Section 3 of Article 6 of the Texas Constitution and Article 5.07 of the Texas Election Code are limited to municipal elections. Nevertheless, the premise of the contention is that the constitutional provisions, together with the statutory amplified reiteration thereof in the Election Code, restricting the right to vote in such elections to qualified resident electors of the school district who own property duly rendered for taxation are constitutionally impermissible as a violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Whatever merit we might have accorded appellants' contention as an open question

has been foreclosed by the decision of our Supreme Court in Montgomery Independent School District v. Martin, 464 S.W.2d 638 (Tex.1971). There, as in the case at bar, two separate but simultaneous school district elections were held. The qualified electors residing in the school district who owned property duly rendered for taxation rejected the bond issue at one election; but, at the other election, the other qualified resident electors approved the bond issue. A majority of the combined votes cast in both elections were favorable to the bond issue. The board of trustees entered an order declaring the result of the election to be in favor of the bond issue and authorized the issuance of the bonds and levied an ad valorem tax. The Attorney General of Texas, who is required by Section 20.06 of the Texas Education Code, V.T.C.A., to examine school bonds and approve them for issuance if he finds they have been authorized in accordance with law, refused to approve the issue. The basis of the refusal was that the bond issue was not approved by a majority of the qualified resident electors who owned property duly rendered for taxation as required by Article 6, Section 3–a, and Article 7, Section 3, of the Texas Constitution, as well as by Section 20.04(a) of the Texas Education Code. The school district sought a writ of mandamus to compel the attorney general to approve the bond issue, urging that the constitutional and statutory provisions on which the attorney general relied for withholding his approval were unconstitutionally violative of the due process clause of the Fourteenth Amendment. The school board cited in the main the same federal decisions advanced here by appellants in support of the contention that the Texas election provisions are unconstitutionally restrictive of voting rights. In denying the writ, the Supreme Court held that the constitutional and statutory provisions, which limit the availability of the ballot to those qualified electors who are residents of the school district and who own property duly rendered for taxation, being so universal as to constitute no impediment to any qualified elector who desires to vote, are not unconstitutionally selective in authorizing voting rights, but strengthen the equal protection clause of the Fourteenth Amendment.

Recognizing, but notwithstanding, the import of *Montgomery*, appellants present a multifaceted proposal that the decision is contrary to prevailing federal constitutional law. Particularly, appellants invite us to deviate from the *Montgomery* holding that denies the right to vote in school district maintenance tax and bond elections to qualified resident electors who own no property or render no property for taxation and to non-resident qualified electors who own property rendered for taxation in the district, especially since the jury here found these non-residents to be persons interested in the affairs of the school district. Without lengthening this opinion to further particularize appellants' presentation and to list the federal decisions cited in support thereof, suffice it to state that explicit and implicit in the *Montgomery* decision are the determinations, which were made after distinguishing the principal federal decisions cited including *Kolodziejski*, that answer and are adverse to appellants' contention. Any further discussion would be academic, for the Supreme Court's decision is conclusive on the law. Vernon's Ann.Tex.Const. art. 5, § 6. Points one and three are overruled.

The fourth point of error reads, "The District Court erred in holding the last approved tax roll was the proposed 1973 roll, when the last approved tax roll was in a gross sum of $4,856,070, rendering a bond issue of $500,000 excessive and void under Article 20.04, (b)(1), V.A.T.S. Education Code." Parenthetically, it is proper to record that prior to the proceedings under review, appellants were parties to another suit in the same court in which they were successful in setting aside the taxable valuations placed on property within the school district and substituting taxable valuations determined by the court appointed master in chancery which the court approved and

ordered adopted and used by the school district.

 Aside from the fact that the asserted holding made the subject of the point of error is not found in the court's judgment, unless it can be said that it is implied by the court's approval of the issuance of bonds in the sum of $500,000, the point is otherwise unavailing. Appellants pleaded the judicial approval and the closing of the 1973 tax roll and entered into the aforementioned stipulations. They obliquely argue that their stipulation would be inadequate to protect a new and different class of persons in this bond suit. It is, of course, elemental that one may not escape the effect of his binding stipulation on the ground that it may not be binding on others.

 However, the main thrust of appellants' argument is that the action of the tax assessor and collector in lowering valuations of certain properties in the total sum of $167,771 without any authority or court approval after the roll had been judicially approved and ordered adopted and used rendered the entire roll void. The prevailing rule in such circumstances is that if the original assessment rolls are legal, then adjustments or reductions as may be equitable and just do not render the rolls themselves illegal and void. See Edinburg Improvement Ass'n v. City of Edinburg, 191 S.W.2d 752 (Tex.Civ.App.—San Antonio 1945, no writ). Point four is overruled.

Appellants employ their second point of error to complain that the court erred in overruling their motion for judgment on the ground that Article 717m, V.A.C.S., is unconstitutional. The statute is the legislative sanctioned in rem proceeding whereby any public agency of the state authorized by law to borrow money and issue bonds or other evidences of indebtedness may seek, prior to the delivery of any issue of bonds or other securities, a speedy district court declaratory adjudication of the legality of all proceedings appertaining to the validity of the securities. The act specifies that in the event the district court adjudicates the legality of all proceedings taken and proposed to be taken in connection with the issuance of the securities and no appeal is taken or the court's decree is affirmed on appeal, the decree shall be final and conclusive as to all parties affected and shall constitute a permanent injunction against the institution by any person of any action or proceeding contesting the validity of the bonds or other evidences of indebtedness or the provisions made for payment of the same.

Appellants' overrruled motion for judgment only suggests that the court decree, among other matters, that the statute is unconstitutional. The motion neither alleges nor purports to demonstrate in any manner how the statute is unconstitutional as applied to them or that it deprives them of any rights. The brief answer to appellants' point is that had the court declared the statute unconstitutional, a question we do not reach or consider, appellants would not have been entitled to judgment on that ground. To prevail in the consolidated suits, appellants were required to establish a constitutional infirmity that would have avoided the election or to show that the last approved tax roll would not support the bond issue in the amount authorized and ordered. That neither of these matters was established is evident from our action in overruling points one, three and four.

 Moreover, appellants do not now allege, nor point to any showing made by them, that either the application of the statute or the operation of the judgment conforming thereto has worked some injury or prejudice to them, or deprived them of any opportunity to test the validity of the election and the tax levied and the bonds ordered issued pursuant thereto, or denied to them any other rights. At most, appellants merely argue that the statute deprives persons of their right to due process and equal protection of the laws. It is axiomatic that the constitutionality of a stat-

ute will be considered only when the question is properly raised and a decision becomes necessary and appropriate to the disposal of the case. Wood v. Wood, 159 Tex. 350, 320 S.W.2d 807 (1959). Mere allegations of unconstitutionality do not entitle appellants to have the validity of the statute adjudicated. O'Brien v. Ammerman, 233 S.W.2d 1016 (Tex.Civ.App.—Galveston 1921), affirmed 112 Tex. 254, 247 S.W. 270 (1922). It is not enough to allege that the statute may impair the rights of others; to have standing to challenge the constitutionality of the statute, appellants must show that they are injured by its operation. Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). Since the statute did not deprive appellants of their right to test the validity of the election and the actions taken appertaining thereto nor their right to appeal therefrom, they are in no position to invoke a ruling on the constitutionality of the statute absent a showing of some injury that will likely result to them from the application of the statute for which they have no remedy at law, O'Brien v. Ammerman, supra, or a claim that it deprives them of some rights, Zachary v. City of Uvalde, 42 S.W.2d 417 (Tex.Comm'n App. 1931, jdgmt adopted), or that they are prejudiced by the statute. Austin Fire & Police Departments v. City of Austin, 149 Tex. 101, 228 S.W.2d 845 (1950). Point two is overruled.

The judgment is affirmed.

## ON MOTION FOR REHEARING

REYNOLDS, Justice.

■ The Southland Independent School District maintenance tax and general obli-

gation bond election was held on April 28, 1973. Subsequently, on March 25, 1974, a three-judge federal court held Sections 3 and 3-a of Article VI of the Texas Constitution and Articles 5.03, 5.04 and 5.07 of the Texas Election Code to be "unconstitutional insofar as they condition the right to vote in bond elections on citizens' rendering property for taxation." Stone v. Stovall, 377 F.Supp. 1016 (N.D.Texas 1974).[1]

In their first amended motion for rehearing, appellants observe that we did not mention Stone v. Stovall, supra, and protest because we have not followed this "latest and highest judicial ruling upon the constitutionality" of these election provisions. Perhaps—at least as indicative of the in-depth review we made in preparing, and in the interest of clarification in expressing, our original opinion—we should have mentioned Stone; however, by following the authoritative statements in Stone expressly applying its March 25, 1974 pronouncements prospectively only and disclaiming any intent to invalidate bond elections held prior thereto, we were required to adhere to the law as declared by the Texas Supreme Court in Montgomery Independent School District v. Martin, 464 S.W.2d 638 (Tex.1971).

Explanatorily, in Stone, the City of Fort Worth, Texas, held two separate but simultaneous bond elections, one for transportation bonds and one for library bonds, at which the votes of those who had rendered their property for taxation were kept separate from the votes of those who had not rendered property for taxation. Both classifications of voters approved the transportation bonds, which were issued and sold. However, a majority of the property-rendering voters rejected the library bonds,

1. On April 25, 1974, the United States Supreme Court granted an application for partial stay in No. A-986, John L. Hill, Attorney General of Texas, appellant, v. Michael L. Stone, et al., and the judgment entered in Stone v. Stovall, 377 F.Supp. 1016 (N.D. Texas 1974), was "stayed to the extent that it prohibits the use of the dual-box election procedure," pending the timely filing and dis-

position of an appeal. 416 U.S. 963, 94 S.Ct. 1984, 40 L.Ed.2d 314. An appeal was filed May 17, 1974, as No. 73-1723, Hill v. Stone; probable jurisdiction was noted October 15, 1974. —— U.S. ——, 95 S.Ct. 37, 42 L.Ed. 2d 45. Appellants state in their first amended motion for rehearing that oral arguments are scheduled for January 20, 1975.

while the non-renderers of property voting in this election approved the bonds by a three-to-one margin. The combined votes of both groups showed that a majority of all the voters participating favored issuing the library bonds. Because a majority of the property rendering voters did not approve the library bonds, the City of Fort Worth refused to sell the bonds, and the *Stone* lawsuit resulted.

Recognizing that the Texas Supreme Court in *Montgomery* has held that the election provisions limiting the ballot to property rendering citizens are constitutional, the federal court in *Stone,* citing in marginal note 6 the same United States Supreme Court decisions which the Texas Supreme Court distinguished and deemed inapposite in *Montgomery,* held the property rendering requirement to be unconstitutional. The basis of the holding is that the Texas property rendering requirement violates the due process clause of the Federal Constitution by disenfranchising those who have failed to render property for taxation. In consequence thereof and since a majority of all voters participating in the election approved the library bonds, the City of Fort Worth was ordered to consider the bonds approved at the election.

Notwithstanding its holding, the *Stone* opinion was careful to note, 377 F.Supp. at page 1024, that with the exception of that election, "we shall order prospective relief only," and to draft the judgment to read:

"Fifth. This decree is intended in no way to render invalid bond elections already held or bonds already issued."

Inasmuch as *Stone* expressly disclaims any retroactive operation, the previously held Southland Independent School district bond election was valid by virtue of the law declared in *Montgomery.* Inasmuch as *Stone* requires the votes of those citizens who did not render property for taxation to be counted, those votes cast in the school district bond election not only do not change the result, but add to the margin by which the bonds were approved.

Under either view, the result is the approval of the school district bonds as we held in our original opinion.

The other matters advanced in the motion and first amended motion for rehearing have been reviewed. We are not persuaded to depart from the disposition made of these matters in our original opinion.

The motion for rehearing and the first amended motion for rehearing are overruled.