## GUS A. MARKOWSKY ET AL V. J. T. NEWMAN ET AL.

No. 7594. Decided February 21, 1940.
(136 S. W., 2d Series, 808.)

*Lewright, Dyer & Sorrell* of Corpus Christi, for appellants.

Since the allegations of plaintiffs were sufficient to show such voters to have been illegal voters in the bond election it was error for the trial court to sustain an exception of contestees. City of Dayton v. Allred, 123 Texas 60, 68 S. W. (2d) 172; Travelers Ins. Co. v. Marshall, 124 Texas 45, 76 S. W. (2d) 1007, Arnold v. Leonard, 114 Texas 535, 273 S. W. 799; Ellis v. Holcombe, 69 S. W. (2d) 449.

*E. A. Tully, Jr.,* City Attorney, *John J. Bell* and *H. W. Wallace,* all of Cuero, for appellees.

A taxpaying voter is not disqualified for voting in a bond election because of his failure to render his property on or before the date set forth in the statutes for the rendition of property for taxation. Texas Pub. Util. Corp. v. Holland, 123 S. W. (2d) 1028; Campbell v. Wright, 95 S. W. (2d) 149; 20 C. J. 254.

*R. L. Miller*, of Gonzales, and *Sewall Myer*, City Attorney of Houston, filed briefs as amici curiae.

MR. JUDGE SLATTON, of the Commission of Appeals, delivered the opinion for the Court.

Questions of law have been certified to this Court by the Court of Civil Appeals at Galveston. The facts appear in the certificate, which we quote:

"This is an election contest case.

"The questions of law hereinafter certified arise out of the record in this cause—pending here undisposed of on appeal from the district Court of DeWitt County— involve among other issues the correct construction of Article VI, Section 3a, of the State Constitution, and of Article 2955a, Vernon's Ann. Civil Statutes, reading in part, 'When an election is held by any city * * * for the purpose of issuing bonds * * * only qualified electors who own taxable property in the State, county, political subdivision, district, city or village where such election is held, and who have duly rendered the same for taxation shall be qualified to vote * * *,' etc.

"The election, out of which the questions hereafter certified arise, was held in the City of Cuero, on November 29, 1938. In said election the proposition was submitted to the qualified voters of said city of whether said city should issue $150,000.00 of lighting and power system revenue bonds for the purpose of constructing and installing an electric lighting and power system for said city. On the following day the canvass of the election was held by the City Council of Cuero, and as a result it was declared that the proposition for the issuance of such bonds had been carried by a majority of 85 votes. Appellants were contestants, appellees contestees, below. The case was tried without a jury, and after sustaining the challenges of appellants to the ballots cast by 61 of the persons who voted in such election, the court found that the illegal votes were not sufficient in number to have changed the result of the election, and rendered judgment on February 4, 1939, denying the relief sought by appellants.

"The questions of law hereinafter certified arise out of the court's action in sustaining exceptions to the following allegations of appellants' statement or pleading, and having same stricken:

"(9a) 353 persons, whose names are set forth in Exhibit A hereto attached, and hereto made a part hereof, for all purposes, were permitted to vote in said election and actually voted at said election for the issuance of said bonds and for said proposition, and which said 353 votes were actually counted by said election officials in determining the results of said election, and which said voters, at said time, were not legal and qualified voters of the city of Cuero, Texas, and were not legally authorized to vote at said election, the same being an election involving the expenditure of public funds and being such an election as that, in order to be a qualified voter therefor, the person offering himself to vote must not only have paid his poll tax and have been a resident of the city of Cuero, but, also, must have been a property-owning resident of the city of Cuero, and must have duly rendered such property for taxation during the current year at which he offered himself to vote, and your contestants further charge and show unto the court that, in order for a person voting in said election on November 29, 1938, to have duly rendered his property for taxation, that the same must have been rendered by him to the proper official of the city of Cuero, being its tax assessor and collector, on or before April 1, 1938, and your contestants charge and show unto the court that said 353 voters herein referred to, did not actually render their property for taxation to the said city assessor of the city of Cuero on or before April 1, 1938, and therefore, were not lawfully qualified voters to vote in said city election on November 29, 1938.

"'Contestants show unto the court that they have been informed and, upon such information, allege the fact to be that the city of Cuero has attempted to change its fiscal year so as that same commences upon April 1st of each year and terminates upon March 31st of each year, but they aver that such change of the fiscal year is the only attempted change of the fiscal year which said city has ever made and, therefore, that the city authorities of said city could, by proper ordinance, fix the time of rendition of property for taxation in said city so as to have the same commence and terminate during the first three-months period of such new fiscal year and so as that same would terminate upon June 30th of each year, but your contestants do not know whether such attempted change of rendition period has ever been made by the city or not,

but they here now allege the fact to be that, in any event, said city has never attempted and, under the facts, could not attempt to change the time of rendition of property for taxation therein to any period of time past June 30th of each year, and if it should be found and determined by the court that the said city of Cuero has, lawfully, changed its fiscal year as that the same commences on April 1st of each year and terminates upon March 31st of the following year, and if it should be found and determined that the said city of Cuero has, by proper ordinance, changed the period of time, the voluntary rendition of property for taxation, as permitted by statute, from April 1st of each year to the first three-months' period after April 1, 1938, which said three months' period would expire June 30, 1938, then they further charge and show unto the court that none of said 353 voters herein referred to, duly rendered their property for taxation within said three months' period of time, and that, actually, none of said 353 voters rendered his or their property for taxation to the said city of Cuero until long after June 30, 1938, and that, therefore, irrespective of said change of fiscal year and change of rendition period, if the same be found to exist, said 353 voters did not "duly render" their property for taxation, and if it should be found and determined by the court that said 353 voters' names actually appeared upon the tax rolls of the city of Cuero as having been rendered by them, that still and nevertheless, the same improperly appeared thereon, and said 353 persons so voting for said proposition were illegally and wrongfully permitted to vote therefor, and their said votes should not have been counted and used in determining the results of said election, and upon the same not being counted and used in determining the proper results of said election, the results thereof would be entirely different, and said proposition would be defeated by a large majority, and said election officials wrongfully and improperly counted and used said 353 votes in canvassing and determining the results of said election.'

"The correctness of the court's action in sustaining exceptions to the foregoing allegations, and having them stricken, is determined by the proper construction to be placed on Article VI, Section 3a, of our Constitution, and on Article 2955a Vernon's Ann. Civil Statutes, which, of course, employs the same language as that used in Section 3 of Article VI of the Constitution, and which we have above, in part, quoted. If, as we interpret the holding by the Honorable Court of Civil Appeals, at Fort Worth, in Texas Public Utilities Corporation v. Holland, 123 S. W. (2d) 1028, property has been rendered for

taxation by its owner, then within the meaning of Article VI, Section 3a, of the Constitution, and of Article 2955a, even when it has been placed upon the rolls by the tax assessor, after the owner has failed for any cause to make the list, and furnish it to the assessor, such action qualifies the property owner to vote in a bond election,—that is to say, if an assessment of property for taxation by the assessor also constitutes compliance with the requirements of the Constitution and statute, as a qualification to vote in such an election, then, the court's action was correct. But this court doubts that, with reference to taxation, the word 'render' can be properly taken as having the same signification as the word 'assess.' There is merit, for instance, on the part of a property owner who voluntarily renders his propery for taxation, especially where it would otherwise escape its just share of the burden of taxation; there is none when the property is assessed—that is none, so far as the property owner is concerned, though no doubt the diligence of the assessor, in ferreting out and assessing property which would otherwise escape, is meritorious on the part of the assessor. As the difference in meaning, when applied to taxation, between assessment of property for taxation by an owner, and its rendition for taxation by its owner, is well known, we are unable to persuade ourselves that such language was placed in the Constitution to include the meaning that assessment for taxation of property. by the assessor should qualify a property-owner to vote in the bond election, for the language is highly inept to bear such meaning. In this connection we will add, that the Honorable Court of Civil Appeals, at Fort Worth, cite, as supporting its holding, the case of 'Campbell, Mayor, et al v. Wright, County Attorney' (Civ. App.), 85 S. W. (2d) 149. It is to be doubted whether, strictly speaking, the cited case can be so taken, as the point was not before the court for a ruling.

"So interpreting the holding of the Fort Worth court in cited case, and differing with that view of the law, this court— expressing that difference as its tentative opinion in this cause— and regarding this as a compliance with the Supreme Court Rule No. 15, respectively certifies these questions:

"1. Did the court err in sustaining the exception aforesaid, and thereby holding in effect what the Honorable Fort Worth court held, namely, that assessment of property for taxation by the assessor will satisfy the legal requirement for qualification to vote in a bond election equally with the voluntary rendition of his property for taxation by a property-owner?

"2. With reference to Article 1043, Vernon's Ann. Civil

Statutes, amended 1925, if it be found that the fiscal year of the City of Cuero runs otherwise than the calendar year—that is, commences on April 1st of each calendar year and terminates on March 31st thereafter, what is the latest date at which property can be rendered for taxation so as to qualify the property-owner to vote in such a bond election? In connection with the last question we should state that appellants contend that appellees induced numerous negroes and Mexicans to render personal property of small value for taxation on the eve of the election, which was long after the expiration of three months from April 1, 1938, in order to qualify them to vote, and contend such persons had no intention of paying taxes. While we assume the motive which causes a property-owner to render property for taxation is not a proper matter of inquiry, we are doubtful as to whether Article 1043 should be construed as merely directory.

"3. Is R. S. Article 1043 mandatory, or merely directory?"

It should be noted that the court in certifying the questions of law in this cause does not sufficiently comply with Rule 15 of the rules governing procedure in the Supreme Court of Texas. Rule 15 reads as follows:

"When any Court of Civil Appeals shall certify to the Supreme Court any question of law for determination, or shall send to the Supreme Court any cause upon certificate of dissent, either upon its own motion or that of any party, in either case the certificate shall be accompanied by the briefs filed in the Court of Civil Appeals. Also, the Court of Civil Appeals may accompany such certificate with the entire record in the case, or any part thereof that it deems advisable. The Court of Civil Appeals shall also accompany the certificate with all or any part of the record that any party to the suit may request. Except in cases of emergency, the emergency to be stated in the certificate, all cases certified to the Supreme Court under Article 1851, R. C. S., 1925, shall be accompanied by a proposed or tentative opinion of the Court of Civil Appeals, which proposed or tentative opinion shall set forth the views and tentative opinion of the Court of Civil Appeals on the questions certified. In certifying questions under Article 1852, R. C. S., 1925, the provisions of Article 1853, R. C. S., 1925, shall be fully complied with. All cases certified under Article 1855, R. C. S., 1925, shall be accompanied by the opinion of the Court of Civil Appeals in such cases. The Clerk of the Supreme Court shall, upon receipt of the certificate and accompanying record, issue notices to the attorneys whose names

appear of record in the case, of the day on which the question, or questions, as the case may be, shall be set down for submission."

■ The rule was evidently promulgated to lighten the increasing burdens of the Supreme Court and to give the Court the benefit of the conclusions and the reasonings therefor of the Court of Civil Appeals. In order to accomplish the purpose of the rule the proposed or tentative opinion of the Court of Civil Appeals should be full and complete within itself, so that the Supreme Court, if it concurs therein, may adopt the same as the opinion of the Supreme Court.

On account of the importance of the questions here involved this Court will not dismiss the certificate, but will do so in the future when the certificate is not accompanied with a proposed or tentative opinion of the Court of Civil Appeals.

■ A consideration of the pleadings, to which the trial court sustained a special exception, demonstrates that contestants challenged the votes of electors because such electors had not rendered their property for taxes to the City of Cuero within the time prescribed by Article 1043, Vernon's Annotated Civil Statutes, 1925. It was averred that such electors had not "duly rendered" their property for taxation to the City of Cuero, but that allegation is only a dogmatic conclusion. However, in the same pleading it is specifically alleged that said electors "rendered his or their property for taxation to the City of Cuero until long after June 30, 1938." When the trial court acted upon the special exception he was required to determine the legality of a rendition of property for taxation to the City of Cuero made by the owner thereof after the time required by the quoted statute. He was not required to pass on the question decided by the Honorable Court of Civil Appeals at Fort Worth in the case of Texas Public Utilities Corporation v. Holland, 123 S. W. (2d) 1028. There the property owner had not listed his property to the city, but the same had been placed upon the tax rolls by the assessor and collector of said city or such property had been listed by an agent of the property owner. According to the pleading quoted in the certificate the challenge here made is grounded upon the fact that the property owner did not "duly render" "his or her property for taxation of the City of Cuero on or before April 1, 1938, and in the event the City of Cuero had changed its fiscal year to commence April 1, 1938, that such renditions were not made within the three months' period beginning April 1, 1938, and that actually none of said 353 voters rendered his or their

property for taxation to the said city of Cuero until long after June 30, 1938."

Article 1043 as amended by the Acts of the 43rd Legislature, 3rd Called Session, p. 50, Ch. 27, reads as follows:

"Each person, partnership and corporation owning property within the limits of the corporation shall, between January first and April first of each year, hand to the city assessor and collector a full and complete sworn inventory of the property possessed or controlled by him, her or them, within said limits on the first day of January of the current year. If the fiscal year of a municipal corporation runs otherwise than the calendar year, such corporation may by ordinance require said inventory to be made as of the first day of such fiscal year, in which case the inventory shall be handed to the city assessor and collector within the first three months of the fiscal year."

■ The purpose of the statute is to require all property within the limits of the municipality on the first day of January of the current year to be inventoried to the city assessor and collector so that said property shall bear its share of the expenses of the city government. This statute and other applicable statutes providing for the rendition, assessment and collection of taxes by a city such as the City of Cuero do not evidence an intent on the part of the Legislature that the "time of rendition" provided in the above quoted statute is mandatory. The general rule to be applied to the instant statute may be stated as follows:

"Where a statute directs the doing of a thing in a certain time without any negative words restraining the doing of it afterwards, the provision as to time is usually directory."

Or, as stated in 39 Texas Jurisprudence, Section 16, page 38, "a statute authorizing or commanding an act to be performed or a thing to be done, a provision as to time is usually regarded as directory; that is, it does not necessarily follow that a thing which a statute directs to be done at a particular time may not be done afterwards. Nor is it implied that an act for which a statute affirmatively provides will be effectual if it is done at a different time than that prescribed."

It must be noted that the statute quoted does not restrain the doing of the things required by it after the time provided therein. In the case of Federal Crude Oil Company v. Yount-Lee Oil Company, 122 Texas 21, 52 S. W. (2d) 56, this Court

adopted the following from Mr. Sutherland's work on Statutory Construction, Section 611, page 1114:

"Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey the rights of those interested will not be prejudice, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it will be sufficient, if that which is done accomplishes the substantial purpose of the statute."

It certainly cannot be said that a rendition made in the manner alleged would not be a legal rendition, and the property so rendered and the owner thereof did not become liable for taxes levied on such rendition.

Under Article 6, Section 3 of the Constitution of Texas it was held that a person otherwise qualified to vote who owned property was a taxpayer and qualified to vote in elections to determine expenditure of money or assumption of debt (in an election like this) even though his property did not appear on the tax rolls. Neither was it necessary that the property tax was actually paid. Kempen et al v. Bruns, 195 S. W. 643; Hillsman v. Faison, 57 S. W. 920. It is a matter of common knowledge that many persons were allowed to vote in elections such as this without having any property on the tax rolls and in fact without paying any taxes to the municipality at all. In order to cure this evil and perhaps to further guarantee an honest election, the amendment quoted was adopted by the people of this State. In construing that amendment the language used therein must be presumed to have been carefully selected and the words used are to be interpreted as the people generally understood them. Another rule of construction is generally, it may be said, that in determining the meaning, intent and purpose of a constitutional provision the history of the times out of which it grew and to which it may be rationally supposed to have direct relationship, the evils intended to be remedied and the good to be accomplished, are proper subjects of inquiry. Travelers Insurance Company v. Marshall, 76 S. W. (2d) 1007.

Applying the rule stated to the amendment, we must ascertain the meaning intended by the people in the use of the term "duly rendered." We learn from Webster's dictionary that the word "duly" means "in due, fit or becoming manner, properly, regularly, sufficiently, timely, or orderly." And from

the same authority it is said that the word "render" means "to give an account, to explain or confess, to surrender." So, then, it may be safely said that the term in its ordinarily accepted meaning as used in the amendment simply means only qualified electors who own taxable property * * * who have in due, fit and becoming manner given an account or surrendered the same for taxation. It might be further safely said that the good sought to be accomplished by this amendment was to induce owners of property to place it upon the tax rolls and become liable for its pro rata share of the taxes levied and assessed by the municipality. Applying this construction to the constitutional amendment and the construction placed upon our taxation statutes, it cannot be said that the electors described in the pleadings quoted were not qualified electors within the purview of the amendment.

It is argued by the contestants that the Legislature in the enactment and amendment of Article 1043 by using the word "shall" in the statute intended that all requirements thereof were mandatory. It may be conceded that the Legislature intended by the statute to require all property situated within the municipality to be inventoried to the city for the purpose of taxation, but the failure of the Legislature to restrain by express words the inventory of property after the time fixed in the statute indicates to our minds that the time provided therein was not mandatory but directory. This conclusion necessarily follows when we consider that if property is inventoried after the time specified in the statute to the city and the city authorities accept the same, no injury could possibly accrue to the property owner or the city because of the belated time of such rendition. Moreover, it would be of great benefit to the taxing authorities to have such rendition of personal property, particularly where such property cannot be easily found by the city authorities. It follows, then, that the trial court did not err in sustaining the special exception urged by the contestants to such pleading.

The first question, after omitting the immaterial portion certified by the Court of Civil Appeals, is "Did the court err in sustaining the exception aforesaid?" to which we answer in the negative.

With reference to the second question certified by the Court of Civil Appeals, it is apparent that the court did not certify sufficient facts upon which a question of law might be predicated. We are therefore without authority to answer the same.

With reference to the third question, "Is R. S. Article 1043

mandatory, or merely directory?" we answer in accordance with our conclusions above expressed that the Article 1043 with reference to time of rendition of property is directory. It must be understood that our answer to the third question is limited to the time element of the statute, because the facts of this certificate have only placed that question before us.

Opinion adopted by the Supreme Court February 21, 1940.