ERNEST POLK ET AL V. EUGENE VANCE ET AL.

No. A-3280. Decided November 21, 1951.
Rehearing overruled December 19, 1951.
(243 S. W., 2d Series, 829.)

*McNees & McNess* and *J. L. McNess*, all of Dallas, for appellants.

In support of the contention that the election to abolish the corporate existence of the city was valid. Scarborough v. Eubank, 53 S.W. 573; Boynton v. Brown, 164 S.W. 897; Thurston v. Thomas, County Attorney, 7 S.W. 2d 105.

*Shirley W. Peters*, of Dallas, for appellees.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This case is before us on certificate from the Honorable

Court of Civil Appeals, Fifth Supreme Judicial District, at Dallas. We quote the following portions of the certificate:

"The above styled and numbered cause is pending in this Court on appellees' motion for rehearing. The appeal is from a judgment in the trial court refusing appellant's petition for permanent injunction to restrain the appellees, City of Eagle Ford and its officials, from levying and assessing any taxes upon property located within the area of said City and from fixing or attempting to fix tax liens thereon for the year 1950.

\* \* \* \*

"The area of Eagle Ford is west of and adjacent to the boundary of the City of Dallas. The legally qualified voters of the area, on August 23, 1946, duly incorporated the City under provisions of Ch. 12, Title 28, supra [R. S. 1925], by name of Eagle Ford. There was no question raised in the court below, or presented here, challenging such incorporation. On October 18, 1946 a petition with 54 signatures was presented to the County Judge of Dallas County calling for an election to abolish the corporate existence of said City. The petition recites that the petitioners 'are each resident citizens of the City of Eagle Ford, Texas, residing within the corporate limits thereof. \* \* \* That the undersigned constitute a majority of all qualified voters who are actual bona fide residents and property taxpayers residing within the corporate limits of said City.' On said petition the County Judge of Dallas County entered order reciting: 'It appearing that there are less than 100 inhabitants within the corporate limits of said City who are qualified voters and property taxpayers therein according to the last tax assessment rolls of said City, and that said petition bears a majority of all qualified voters who are actual bona fide residents and property taxpayers residing within the corporate limits of said City, and it further appearing that said petition is in every respect in conformity with the law and sufficient to authorize the calling of such an election and the facts set out in said petition are hereby found to be true.' In accordance with such findings the County Judge ordered the election to be held at a designated time and place (November 23, 1946), 'For the purpose of determining whether or not said City of Eagle Ford shall abolish its corporate existence as a municipal corporation \* \* \*.' At said election there were 40 votes cast 'FOR ABOLISHING THE MUNICIPAL CORPORATION' and 9 votes 'AGAINST ABOLISHING THE MUNICIPAL CORPORATION.' On the returns, the County Judge declared the result and entered order on the minutes of the Commissioners' Court abolishing the municipality of Eagle Ford. ·

"The grounds upon which the appellees contend that the City of Eagle Ford was not abolished by the election of November 23, 1946 are: (a) That the petition to the County Judge calling for the election was not signed 'by any qualified voter and property taxpayer of the City of Eagle Ford'; (b) that the County Judge was without jurisdiction to order the election to abolish the corporate existence of the City of Eagle Ford at the time the election was called, because same was within one year subsequent to the election of August 23, 1946; incorporating the City; (c) that there were no qualified voters and property taxpayers of the City of Eagle Ford as shown by the last assessment property tax roll of said City, for the reason the City of Eagle Ford had not assessed or collected taxes and had no authority to do so for the year 1946; therefore made no assessment tax roll for that year."

\*    \*    \*    \*

"Question No. 1.

"Was the County Judge, in ordering the election of November 23, 1946 to abolish the corporate existence of the City of Eagle Ford, incorporated by the election of August 23, 1946, acting without legal authority; contravening the provisions of Art. 1134, R. S., providing, 'A new election shall not be ordered in less than one year'?"

Article 1134 appears in Chapter 11 of Title 28, R. S. 1925. The articles governing abolition of municipal corporations appear in Chapter 19 of that Title. In its present form Article 1134 reads as follows:

"If the inhabitants of such town or village desire to be so incorporated, at least twenty residents thereof, who would be qualified voters under the provisions of this chapter, shall file an application for that purpose in the office of the county judge of the county in which the town or village is situated, stating the boundaries of the proposed town or village, the name by which it is to be known when incorporated, and accompany the the same with a plat of the proposed town or village including therein no territory except that which is intended to be used for strictly town purposes. If any town or village be situated on both sides of a line dividing two counties, application may be made to the county judge of either county in which a portion of said town or village is located, in manner and form as herein provided. A new election shall not be ordered in less than one year."

It is the position of appellees that the last sentence of that article providing that "a new election shall not be ordered in less than one year" prohibits the ordering of an election for the abolition of the corporate existence of a town or village within that time, the same as it prohibits the ordering of a new election to incorporate it. If they are correct in that position, then the election to abolish was void for want of power in the county judge to order same. On the other hand, if that particular provision of Article 1134 has no application to elections to abolish, then there is no statute prescribing a time within which such an election can be ordered.

■ An Act of the 25th Legislature, 1897, Chapter 131, p. 193, amended both Articles 580, R. S. 1895, which in substance is present Article 1134 relating to the incorporation of towns and villages, and Article 615, R. S. 1895, which in substance is present Article 1261 relating to the abolition of incorporated towns and villages. This proviso was appended to Article 580: "* * * and providing, that a new election shall not be ordered in less than one year." Prior to that time no similar provision appeared in any of the statutes, and it has never appeared in any statute since that time, other than in Article 1134. The Act in separate sections dealt with two elections, one to incorporate and the other to abolish. It forbade a new election to incorporate within one year, but was silent as to the time within which an election to abolish could be ordered. It seems clear that since the Act dealt with two different kinds of elections in separate sections and placed a limitation upon only one of them, there was no intention to place that same limitation upon the other. As a further indication of the legislative intent to treat incorporation and abolition separately we observe that Article 1134 falls within Chapter 11, Title 28, pertaining to the incorporation of towns and villages, while each Article pertaining to their abolition appears in Chapter 19 of the same Title. Each chapter is complete within itself in so far as it relates to its particular subject, and we can find no warrant for holding that the Legislature intended for the provision under discussion to apply to the elections governed by Chapter 19.

Question No. 1 is answered "No."

■ Question No. 2 is as follows:

"The City of Eagle Ford not being in existence as a corporate entity on January 1, 1946, thus not having made any assessment of property for taxation from which to compile a tax roll of such resident taxpayers for that year, in absence

of proof that the petitioners for the election and those voting at said election were not property taxpayers, that is, own property in the area, was the election to dissolve the corporation void?"

Article 1243, R. S. 1925, prescribes these qualifications of voters at an election to abolish the corporate existence of cities and towns:

"All persons who are legally qualified voters of the State and county in which such an election is ordered, and are resident property taxpayers in the city or town where such election is to be held, as shown by the last assessment roll of such city or town, shall be entitled to vote at such election."

Appellees in this proceeding take the position that the election to abolish was void because there were no qualified voters in the City of Eagle Ford as shown by the last assessment roll of the city, for the reason that the city had not assessed or collected any taxes, and therefore had made no assessment roll for the year 1946. In principle our opinions in Markowsky v. Newman, 134 Texas 440, 136 S. W. 2d 808, and Hanson v. Jordan, 145 Texas 320, 198 S. W. 2d 262, afford an answer to this question. In the latter case we construed Article VI, Section 3a, of the Constitution, adopted in 1932, which provided that in bond elections in any city, town, or village only qualified voters who owned taxable property therein and who had duly rendered the same for taxation should be qualified to vote. In that case the voters at the election had not rendered property for taxation, but were otherwise qualified. The reason they had not rendered their property was that the city had never levied an ad valorem tax. This court in answer to a certified question ruled that the citizens of the City of Cleveland who were otherwise qualified to vote could not be deprived of that privilege by the fact that they had not rendered their property for taxation when the city had never required a rendition or had never levied any ad valorem taxes. Quoting from our opinion in the Markowsky case, supra, we interpreted that constitutional provision in the light of its real purpose, which was " 'to induce owners of property to place it upon the tax rolls and become liable for its pro rata share of the taxes levied and assessed by the municipality'; that the evil intended to be remedied thereby was to keep people from voting in such elections 'without having any property on the tax rolls and in fact without paying any taxes to the municipality at all.' "

The same purpose is manifested in the provision under re-

view and for the reasons for permitting property-owning citizens of Cleveland to vote in that bond election, notwithstanding they had not rendered their property for taxation, apply to the property-owning citizens of Eagle Ford and authorized them to vote at the election to abolish the incorporation.

Question No. 2 is answered "No."

Question No. 3 is as follows:

"Taking into consideration Ch. 9, R. C. S. 1925, especially Articles 3069 and 3042, pertaining to Statutory proceedings governing election contest, did the District Court have jurisdiction to hear and determine who were qualified voters at said election, and enter a declaratory judgment declaring said election void?"

Appellees did not comply with the law governing election. contests as set out in the statutes referred to. We interpret the question to inquire whether or not this proceeding was, in effect, an election contest. In a statutory election contest the inquiry is confined to such subjects as are specified in the statutes. This proceeding challenges the power of the county judge to enter an order calling an election, and the district court had jurisdiction to determine whether or not that order was void for want of power to issue it.

Opinion delivered November 21, 1951.

Associate Justice Wilson not sitting.

Rehearing overeruled December 19, 1951.