ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

April 8, 2008

The Honorable Phil King
Chair, Committee on Regulated Industries
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0615

Re: Whether a limit on increases to annual earnings used in calculation of retirement benefits of vested employees of the City of Fort Worth contravenes article XVI, section 66 of the Texas Constitution (RQ-0632-GA)

Dear Representative King:

Article XVI, section 66 of the Texas Constitution applies to certain non-statewide retirement systems. TEX. CONST. art. XVI, § 66(a)–(b). Subsection (d) of this provision generally prohibits a change in retirement benefits that reduces or otherwise impairs "benefits accrued" by persons eligible to receive such benefits—without accumulating additional service—on or after the effective date of the change. *Id.* art. XVI, § 66(d). You ask whether a limit adopted by the City of Fort Worth (the "City") contravenes article XVI, section 66 of the Texas Constitution.[1] The limit places a cap on increases to annual earnings used in the calculation of retirement benefits of employees and, as we understand it, may result in lower retirement benefits. *See* City Brief, *supra* note 1, at 3–4. You ask us to assume that the City's retirement system is subject to article XVI, section 66(d) and that the employees at issue are vested participants in the retirement system. Request Letter, *supra* note 1, at 1–2.

---

[1]By a letter dated August 21, 2007, you specifically asked about the City of Fort Worth's proposal to limit the use of overtime in the calculation of retirement benefits. *See* Letter from Honorable Phil King, Chair, Committee on Regulated Industries, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas, at 1–2 (Aug. 21, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.state.tx.us) [hereinafter Request Letter]. The City, however, did not adopt that proposal. *See* Brief of the City of Fort Worth, from Laetitia Coleman Brown, Senior Assistant City Attorney, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General, at 3 (Nov. 9, 2007) (on file with the Opinion Committee) [hereinafter City Brief]. Instead, the City adopted a 12% cap on increases to annual earnings used in the calculation of the retirement benefits. *See id.* at 3–4. We understand, based on a telephone conversation with your office, that you now ask whether the 12% cap contravenes article XVI, section 66. Telephone Conversation with Trey Trainor, Office of Honorable Phil King, Texas House of Representatives (Jan. 8, 2008).

## I.       Background

The City informs us that the City of Fort Worth Employee's Retirement Fund (the "Fund") is a defined benefit pension plan[2] and that a member's basic retirement benefit thereunder is calculated as follows: the member's years of service, multiplied by the member's "compensation base," multiplied by a multiplier. *See* City Brief, *supra* note 1, at 3–4. In general terms, the compensation base is "a member's average annual earnings for the three calendar years during which the member had the highest annual earnings (the 'High 3')." *Id.* at 3. To address the Fund's significant unfunded liability after the September 2001 market crash, the City recently adopted certain changes to the Fund's terms. *Id.* One of the changes adopted "places a prospective 12% cap on any increase in annual earnings used in determining a members's compensation base." *Id.* The City describes the cap's operation as follows:

> [T]he earnings cap takes the members's 4th highest year of annual earnings and uses it as a "base amount." The member's third highest year of earnings (i.e. the least of the High 3) for purposes of the compensation base calculation would be capped at 112% of the member's base amount. The member's second highest year of earnings would be capped at 112% of the amount calculated as the member's third highest year of earnings, and the member's highest year of earnings would be capped at 112% of the amount calculated as the member's second highest year of earnings.

> [T]he 12% cap is ***prospective only*** and applies only to annual earnings as a result of service performed in a calendar year on or after December 1, 2008. In the event that any year of the High 3 is attributable to earnings prior to December 31, 2007 . . . , such annual earnings will not be subject to the 12% cap.

*Id.* at 4.

## II.       Analysis

You suggest that the City's recently adopted limit on increases in annual earnings as applied to vested employees contravenes article XVI, section 66, which provides in relevant part:

> (a)   This section applies only to a public retirement system that is not a statewide system and that provides service and disability

---

[2]"A defined benefit plan . . . consists of a general pool of assets rather than individual dedicated accounts." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). Under such a plan, the employee upon retirement is entitled to receive fixed periodic payments. *Id.* In contrast, a defined contribution plan provides for an individual account, and the employee receives whatever level of benefits the amount contributed by the employee or the employer on the employee's behalf will provide. *Id.*

retirement benefits and death benefits to public officers and employees.

. . . .

(d)    On or after the effective date of this section, *a change in service* or disability *retirement benefits* or death benefits of a retirement system *may not reduce or otherwise impair benefits accrued by a person* if the person:

(1)    could have terminated employment or has terminated employment before the effective date of the change; and

(2)    would have been *eligible for those benefits*, without accumulating additional service under the retirement system, on any date on or after the effective date of the change had the change not occurred.

(e)    Benefits granted to a retiree or other annuitant before the effective date of this section and in effect on that date may not be reduced or otherwise impaired.

. . . .

TEX. CONST. art. XVI, § 66(a), (d)–(e) (emphasis added).

We note that your question implicates only article XVI, section 66(d). You do not ask about retired employees or employees participating in the plan on or after the effective date of the City's interest earning cap. You ask only about "vested" employees. *See* Request Letter, *supra* note 1, at 1–2. While you do not explain the term "vested," we understand that term, in the context of the Request Letter as a whole, to describe persons meeting the constitutional criteria under subsections (d)(1) and (2).[3]  *See id.*[4]

---

[3] Article XVI, section 66 does not use the term "vest" or "vesting." As one court has explained:

> "[V]esting" may be used in two senses in referring to pension benefits. Vesting in a functional sense refers to a provision in a retirement plan whereby the member's right to a benefit becomes effective upon fulfillment of specified qualifying conditions, such as service for a certain period of time, which right is not forfeited by separation from service prior to the prescribed age for retirement. Vesting in a legal sense, on the other hand, refers to a contractual right to and interest in a pension that may be upheld by law.

*Kraus v. Bd. of Trs. of the Police Pension Fund*, 390 N.E.2d 1281, 1284 (Ill. App. Ct. 1979).

[4] *See also* Brief of the Texas Association of Public Employee Retirement Systems, from Max Patterson, Executive Director, TEXPERS, and Robert D. Klausner, Klausner & Kaufman, P.A., at 11 (rec'd Nov. 28, 2007) [hereinafter TEXPERS Brief].

### A.    Constitutional Construction Principles

No Texas court has addressed this issue or otherwise construed article XVI, section 66. Thus, your question requires us to construe the scope of the "benefits accrued" protected by the constitutional provision.   In the absence of Texas precedent, we are guided by the following principles of constitutional construction: When interpreting the Texas Constitution, like a court, we rely "heavily on its literal text and must give effect to its plain language." *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 344 (Tex. 2001) (citing *Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex. 2000), *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997)). Additionally, we must strive "to give constitutional provisions the effect their makers and adopters intended." *Doody*, 49 S.W.3d at 344 (citing *Stringer*, 23 S.W.3d at 355, *City of El Paso v. El Paso Cmty. Coll. Dist.*, 729 S.W.2d 296, 298 (Tex. 1986)).   In determining the intent of the makers and adopters of a constitutional provision, we may consider its legislative history.   *See Stringer*, 23 S.W.3d at 355 (citing TEX. GOV'T CODE ANN. § 311.023(3), *Harris v. City of Fort Worth*, 180 S.W.2d 131, 133 (Tex. 1944)).

### B.    Literal Text

We first consider the literal text of article XVI, section 66(d). By its terms, the constitutional provision bars only changes that reduce or impair benefits (1) "accrued" on or before the effective date of the change and (2) eligible to be received without accumulating additional service by a person that could have terminated or did terminate employment before the effective date of the change. *See* TEX. CONST. art. XVI, § 66(d); *see also id.* § 66(e) (protecting benefits granted to retirees and other annuitants). Thus, article XVI, section 66 does not prohibit changes that apply to benefits that have not accrued before the effective date of the change or do not reduce or impair benefits that have accrued.

The City contends that its change does not reduce or impair "accrued" benefits. *See* City Brief, *supra* note 1, at 5. The City argues that its 12% cap on earning increases does not contravene article XVI, section 66 because, as a result of the prospective application of the cap, "a member's compensation base for determining his [retirement] benefit can *never* be less than the amount of such compensation base as determined" before the change. *Id.* at 4. And, therefore, the City asserts, "a member's benefit will never be less than the level of such benefit using the . . . pre-cap retirement formula." *Id.* As we understand it, however, the amount of the benefit may be less than the amount a member would have received under the pre-cap retirement formula if the member's four highest years of earnings—the member's compensation base—occur after the change and the increases exceed 12% from the previous year.[5] *See Felt v. Bd. of Trs. of the Judges Ret. Sys.*, 481 N.E.2d 698, 700 (Ill. 1985) ("Retirement annuities are calculated on the basis of length of service and of salary, and any change in either obviously will affect the amount of the annuity."). Thus, the City's

---

[5]Additionally, as the Request Letter notes, the affected employees would have contributed to the retirement fund from all their salary—including the increases—but only a portion of their salary will be considered in calculating the employees' retirement benefits. *See* Request Letter, *supra* note 1, at 1 ("[H]ow can employees be required to contribute to the pension fund on money that would not be counted towards the pension benefit?").

contention that the cap does not contravene article XVI, section 66 is in effect an argument that the constitutional provision protects only retirement benefit amounts related to service performed before the effective date of the change, i.e., benefits accrued before the change, but not benefits related to services to be performed in the future. *See* City Brief, *supra* note 1, at 4–5.

In contrast, the Texas Association of Public Employee Retirement Systems ("TEXPERS") and the Combined Law Enforcement Association of Texas appear to argue that article XVI, section 66 prohibits a change in the method or formula for calculating the benefits that will reduce or impair retirement benefits that vested employees would have received before the change, including for services performed in the future. *See* TEXPERS Brief, *supra* note 4, at 3–4.[6]

With this understanding of the differing constructions, we turn to article XVI, section 66(d). The constitutional provision defines neither the term "benefits" nor the term "accrued." *See* TEX. CONST. art. XVI, § 66. Read in context, the benefits protected by the constitution necessarily include the dollar amount of the benefits payable at retirement. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439, 440 (1999) (describing a defined benefit plan as one where the employee upon retirement is entitled to fixed periodic payments, and "accrued benefits" for the purposes of such a plan under the federal Employee Retirement Income Security Act of 1974 (ERISA) is "expressed in the form of an annual benefit commencing at normal retirement age"); *Flisock v. State, Div. of Ret. & Benefits*, 818 P.2d 640, 643 (Alaska 1991) (stating that vested rights protected by the Alaska Constitution "'necessarily include . . . the dollar amount of the benefits payable'" (citation omitted)).

The critical issue here is the meaning of "accrued." "Presuming that the language of the Texas Constitution is carefully selected," a court construes "its words as they are generally understood." *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex. 1995)). The term "accrue" as generally understood means a present right or claim that has become fixed or vested. *Int'l-Great N. R. Co. v. Tex. Co.*, 280 S.W. 282, 285 (Tex. Civ. App.—Austin 1926, writ ref'd) (citing Standard Dictionary, 1 C.J. 733); BLACK'S LAW DICTIONARY 22 (8th ed. 2004) (defining the term "accrue" as "[t]o come into existence as an enforceable claim or right; to arise" as well as "[t]o accumulate periodically."); *see also Smith v. Bd. of Trs. of La. State Employee's Ret. Sys.*, 851 So.2d 1100, 1106 (La. 2003) ("'accrued' has been defined to mean 'in the sense of due and payable; vested'" (quoting BLACK'S LAW DICTIONARY)); *Hammond v. Hoffbeck*, 627 P.2d 1052, 1055 n.4 (Alaska 1981) ("We have previously held that . . . 'accrued rights' is synonymous with 'vested' rights." (citing *Bidwell v. Scheele*, 355 P.2d 584, 586 (Alaska 1960))).[7] Based on this definition, the constitution protects rights to retirement benefits that existed and could be claimed on or before the effective date of the

---

[6]*See also* Brief from Richard W. Carter, Senior Attorney, Combined Law Enforcement Association of Texas, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General, at 2–6 (Nov. 12, 2007).

[7]"The term 'vested rights' is amorphous." *Ex parte Kubas*, 83 S.W.3d 366, 369 (Tex. App.—Corpus Christi 2002, pet. ref'd). "A right cannot be considered a vested right, unless . . . it [has] become a title, legal or equitable, to the present or future enjoyment of exemption of a demand made by another." *Id.* at 370 (quoting *Ex parte Abell*, 613 S.W.2d 255, 261 (Tex. 1981)).

change. This textual reading, however, does not tell us what those rights are and whether they are limited, as a matter of law, to benefits attributable to services already performed as the City suggests.

## C.   Legislative Purpose and Intent

Because the literal text of the constitutional amendment is not dispositive, we consider the purpose and intent of the amendment. "When determining the purpose of a [constitutional] provision," a court considers "the evil to be remedied and good to be accomplished by that provision." *See Brown v. Meyer*, 787 S.W.2d 42, 45 (Tex. 1990) (citing *Markwosky v. Newman*, 136 S.W.2d 808, 813 (Tex. 1940)). Article XVI, section 66 was proposed and adopted to change the result of the Texas Supreme Court's 1937 decision in *City of Dallas v. Trammell*, 101 S.W.2d 1009 (Tex. 1937).[8] In *Trammel*, a retired police officer sued the City of Dallas after the City, pursuant to statutory amendment, reduced the amount paid to retired employees from its pension fund. *Id.* at 1010. The Texas Supreme Court framed the question as follows:

> Does the employee, after retirement, have a vested right to participate in the pension fund to the extent of the full amount of the monthly installments granted to him at retirement; that is, does he have a vested right in the future installments which cannot be affected by subsequent legislation tending to diminish the amount of such installments?

*Id.* at 1011. The court answered in the negative, stating that

> [i]n our opinion, the rule that the right of a pensioner to receive monthly payments from the pension fund after retirement from service, or after his right to participate in the fund has accrued, is predicated upon the anticipated continuance of existing laws, and is subordinate to the right of the Legislature to abolish the pension system, or diminish the accrued benefits of the pensioners thereunder, is undoubtedly the sound rule to be adopted.

*Id.* at 1013.

The effect the Legislature—the makers—intended in adopting House Joint Resolution 54 ("H.J. Res. 54") proposing the constitutional amendment was to insure that retirement benefits (the monthly pension payments) of vested municipal employees would not be reduced or impaired by subsequent, unilateral legislative action.[9]

---

[8]*See, e.g.*, HOUSE COMM. ON PENSION & INVESTMENTS, BILL ANALYSIS, Tex. H.J. Res. 54, 78th Leg., R.S. (2003) (Committee Report (Substituted)) (Background); SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. H.J. Res. 54, 78th Leg., R.S. (2003) (Committee Report (Substituted)) (Digest and Purpose); HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.J. Res. 54, 78th Leg., R.S. (2003) (Background).

[9]*See supra* note 8.

We next consider the effect the voters or "adopters" intended. The Texas Legislative Council, under its analysis of Amendment 15 (H.J. Res. 54) published for the September 13, 2003 election, described the amendment to provide that "any change made to certain benefits provided by certain retirement systems cannot reduce benefits that a person was entitled to receive before the date of the change" and that any reduction of benefits "cannot be applied retroactively to benefits that a person has accrued or is entitled to receive before the date the reduction takes effect." TEXAS LEGISLATIVE COUNCIL, CONDENSED ANALYSIS OF PROPOSED CONSTITUTIONAL AMENDMENTS, September 13, 2003 ELECTION, at 99 (July 2003). Under the arguments supporting the amendment, the Legislative Council explained:

> The amendment would permit local public retirement systems to make changes in the provision of certain benefits as long as the changes apply prospectively. The amendment would also give those retirement systems the flexibility the systems need to adjust retirement benefits if necessary to respond to changing economic times, while still protecting the benefits that local government employees have earned.

*Id.* at 101.

Similarly, the House Research Organization in its report of the proposed constitutional amendment published for the September 2003 ballot stated that "Proposition 15 would prohibit reducing or impairing any future benefits paid by certain local public retirement systems after a person was vested in the system." HOUSE RESEARCH ORGANIZATION, FOCUS REPORT, CONSTITUTIONAL AMENDMENTS PROPOSED FOR SEPTEMBER 2003 BALLOT, at 45 (July 28, 2003). It noted that supporters of the amendment said that the amendment would "leave pension plans with cost-control options, such as reducing the benefits multiplier or increasing active member contribution." *Id.* at 46. On the other hand, it noted that opponents said that the amendment would have a negative impact on the actuarial soundness of municipal pension funds "[b]ecause the amendment would protect all vested employees from having their benefits reduced or impaired, municipal pension plans and local governments [could] no longer make even minor adjustments to plan design or retirement eligibility." *Id.* at 47.

The City relies on bill analyses of a prior House Committee substitute for H.J. Res. 54, indicating that the resolution protected only benefits attributable to service already performed. For instance, a House Committee bill analysis stated that the substitute "would guarantee an annuitant's benefit, and provide for *securing the formula/multiplier* for the active or inactive member *for the years worked should it need to be changed in the future*." HOUSE COMM. ON PENSIONS & INVESTMENTS, BILL ANALYSIS, Tex. Comm. Substitute H.J. Res. 54, 78th Leg., R.S. (2003) at 1 (Committee Report (Substituted)) (Background and Purpose) (emphasis added). This bill analysis also stated that a municipal retirement system under the H.J. Res. 54 substitute "may not reduce or impair *benefits for service performed* before the effective date of this amendment" and "[a]nnuitants are *guaranteed their formula/multiplier for the years they worked* under that formula/multiplier," explaining that "[f]uture benefits to the persons not retired, however, may be manipulated by the

pension system if necessary to ensure the funds' soundness." *Id.* (Analysis) (emphasis added); *see also id.* at 2 (Comparison) (explaining that H.J. Res. 54 guarantees "only benefits already received under formulas worked under" and that it "gives the local government the ability to alter benefits in the future for protection of the pension fund"); *see also* HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.J. Res. 54, 78th Leg., R.S. (2003) at 2 (Digest) (stating that H.J. Res. 54 would prohibit benefits "being reduced or impaired for service performed before the effective date of any change in benefit structure").

The value of these particular analyses on which the City relies indicating that H.J. Res. 54 was intended to protect only benefits related to past services, however, is questionable given that the House committee report substituted version expressly provided that "[b]enefits under a retirement system to which this subsection [h] applies may not be reduced or impaired for service performed before the effective date of any change in the benefit structure . . . ." Tex. H.J. Res. 54, 78th Leg., R. S. (2003) (House Committee Report). This language, which would have supported the City's position, was deleted from the enrolled version of H.J. Res. 54 adopted by the Legislature and approved by the voters. *See* Tex. H.J. Res. 54, 78th Leg., R.S., 2003 Tex. Gen. Laws 6233, 6233–34.

In sum, all that can be concluded from legislative history, is that article XVI, section 66 was intended to protect retirement benefits of vested employees and to prohibit subsequent legislative changes that would reduce or impair these benefits. The constitutional amendment was intended to permit prospective changes to retirement system benefits. However, there is no persuasive support for the view that the constitutional amendment was intended to protect only benefits attributable to services performed before the effective date of a change.

### D.    Other Jurisdictions

In the absence of Texas judicial precedent, we also consider case law from other jurisdictions considering the application of constitutional provisions dealing with the same subject as article XVI, section 66(d) to changes in the compensation base for calculating retirement benefits.[10] *Cf. Brown,* 787 S.W.2d at 45 (stating that decisions regarding other state constitutions may be persuasive). The New York, Illinois, and Alaska courts, under each of those state's respective constitutions, have held that a change in the method for determining the base compensation for calculation of retirement benefits that reduces or impairs the benefits that "vested" employees would have received before the change is unconstitutional. *See Kleinfeldt v. N.Y. City Employees' Ret. Sys.,* 324 N.E.2d 865, 868 (N.Y. 1975); *Felt,* 481 N.E.2d at 701; *Flisock v. State, Div. of Ret. & Benefits,* 818 P.2d 640, 643 (Alaska 1991). We consider these decisions.

In *Kleinfeldt,* the New York Court of Appeals considered whether the application of a statutory amendment that limited the amount of increased compensation earned in a year—which

---

[10]*See* DARRYL B. SIMKO, *Of Public Pensions, State Constitutional Contract Protection, and Fiscal Constraint,* 69 Temp. L. Rev. 1059, 1060 (1996) (stating that the constitutions of Alaska, Hawaii, Illinois, Michigan, and New York expressly confer membership in a public pension system "the status of a contract right").

could be considered in the computation of the final average salary for pension purposes—to a maximum of 20% over the previous year violated the state constitutional provision prohibiting diminution or impairment of retirement benefits.[11] *Kleinfeldt*, 324 N.E.2d at 867. In the period subject to the limitation, the plaintiff-employee's compensation increased, and his salary exceeded his salary for the corresponding period one year earlier by 20%, thus triggering the application of the cap. *See id.* Consequently, the plaintiff's final average salary for retirement purposes was reduced, which in turn, reduced his annual retirement allowance. *Id.* Relying on earlier New York court decisions, the *Kleinfeldt* court held that the salary increase limit "as retroactively applied to those who became members of a public retirement system before its effective date . . . constitutes a diminution and impairment of membership benefits." *Id.* at 868; *see also, e.g., Birnbaum v. N.Y. Teachers Ret. Sys.*, 152 N.E.2d 241, 244–45 (N.Y. 1958) (holding unconstitutional the application of updated mortality tables, which effectively reduced by 5% future retirement allowances, to members entering the retirement system before the effective date of the tables); *Kranker v. Levitt*, 281 N.E.2d 840, 841 (N.Y. 1972) (per curiam) (holding unconstitutional the application to prior retirement system members a statute eliminating inclusion in final average salary of cash payments for accumulated vacation credits). Noting that an employee's rate of compensation is the most significant part of the formula for determining retirement allowance, the court concluded that "increases in salary may not be excluded from final average salary for prior members." *Kleinfeldt*, 324 N.E.2d at 869.

Relying on *Kleinfeldt* as well as Illinois case law, in *Felt*, the Illinois Supreme Court held that a statutory amendment changing the salary base for calculating a judge's retirement benefits—from the judge's salary on the last day of judicial service to the average salary for the final year of service—was unconstitutional "as impairing contracts of already enrolled members of the judicial system."[12] *Felt*, 481 N.E.2d at 701; *see also Bardens v. Bd. of Trs. of Judges Ret. Sys.*, 174 N.E.2d 168, 172 (Ill. 1961) (holding unconstitutional an amendment changing the basis for calculation of a retirement annuity from a judge's salary on the last day of service to the judge's average salary over the last four years of service). There had been an increase in the judicial salaries in the year previous to the plaintiffs' filing for retirement. *Felt*, 481 N.E.2d at 699. Thus, annuities granted to some of the plaintiffs based on the average salary were less than the annuities to which they would have been entitled to receive before the statutory amendment based on the higher salary on the last day of judicial service. *Id.*

---

[11]The New York Constitution provides that after July 1, 1940, "membership in any pension or retirement system of the state or of a civil division . . . shall be a contractual relationship, the benefits of which shall not be diminished or impaired." N.Y. CONST. art. V, § 7.

[12]The Illinois Constitution provides that "[m]embership in any pension or retirement system of the State, any unit of local government . . . shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." ILL. CONST. art. XIII, § 5; *see also Kraus v. Bd. of Trs. of the Police Pension Fund*, 390 N.E.2d 1281, 1290 (Ill. App. 1979) (stating that the Illinois constitutional "convention debates establish an intent to adopt the language and basic thrust of the New York constitutional provision").

The Alaska Supreme Court in *Flisock* considered whether a school superintendent had the right under the Alaska Constitution[13] to have his retirement benefits calculated in accordance with the law in effect when he entered the retirement system. *Flisock*, 818 P.2d at 643; *see also Sheffield v. Alaska Pub. Employees' Ass'n*, 732 P.2d 1083, 1085 (Alaska 1987) (computation of early retirement benefits); *Hammond v. Hoffbeck*, 627 P.2d 1052, 1057 (Alaska 1981) (establishing that an employee's right to retirement benefits vests on employment and enrollment in a retirement system). When the superintendent entered the retirement system, accumulated leave was permitted to be added to the average base salary used to calculate the monthly retirement benefit. *Flisock*, 818 P.2d at 642. The law changed during his employment to disallow the inclusion of accumulated leave, and the retirement system applied the amended law to the superintendent. *Id.* at 642–43. As particularly relevant here, the retirement system had determined that the superintendent did not accumulate the unused leave until after the statutory change, and thus, the change did not impair any benefits he actually had on the effective date of the amendment. *Id.* at 643; *McMullen v. Bell*, 128 P.3d 186, 191 (Alaska 2006) (summarizing its holding in *Flisock*). The Alaska Supreme Court expressly rejected the retirement system's approach, concluding that if the superintendent "had a right when he enrolled in the system to include [the] leave as part of his base salary, it was irrelevant whether he accrued the leave . . . before or after the statutory changes." *McMullen*, 128 P.3d at 191 (summarizing its holding in *Flisock*).[14]

The New York, Illinois, and Alaska court decisions suggest that the authorized method for determining the base compensation of vested employees is a constitutionally protected "right" that "accrues" upon vesting. *But see In re Enrolled Senate Bill 1269*, 209 N.W.2d 200, 202–03 (Mich. 1973) (after reviewing the constitutional framer's debate, concluding that "the legislature cannot diminish or impair accrued financial benefits, but we think it may properly attach new conditions for earning financial benefits which have not yet accrued"). In the absence of any Texas judicial authority, we believe this case law is persuasive authority, even recognizing that the Texas constitutional language is similar, but not identical to these states' constitutional language.

---

[13]Article XII, section 7 of the Alaska Constitution provides: "Membership in employee retirement systems of the State or its political subdivisions shall constitute a contractual relationship. Accrued benefits of these systems shall not be diminished or impaired." ALASKA CONST. art. XII, § 7; *see also Kaho'ohanohano v. State Org. of Peace Officers*, 162 P.3d 696, 741 (Hawaii 2007) (noting that while Alaska adopted the New York constitutional model with the addition of "accrued" modifying "benefits," Alaska has "generally interpreted its provision in line with New York case law").

[14]Additionally, in *Nash v. Boise City Fire Department*, the Idaho Supreme Court—which does not have a constitutional pension provision—considered the application of a 1978 statutory amendment placing a 3% cap on the amount of increase or decrease of cost of living adjustments to annual retirement benefits. *See Nash v. Boise City Fire Dept.*, 663 P.2d 1105 (Idaho 1983). In *Nash*, the plaintiff was a fire fighter from 1953 to October 17, 1978. *Id.* at 1105. The question confronting the court was whether the 3% cap applied to fire fighters retiring after the July 1, 1978 effective date of the amendment "who earned benefits by virtue of service prior to that date." *Id.* Relying on California's modified contract approach, the Idaho Supreme Court stated that Nash's rights were "unquestionably vested, he having worked twenty-five years, the last fifteen of which included the period when the pension plan provided for a fluctuating formula free of the 3% cap," that the pension fund was not insolvent, and that the fund would grow. *Id.* at 1110. The court concluded that under these facts, the 3% cap should not apply to Nash's retirement benefits. *Id.*

### E.    Conclusion

Based on (i) the literal text of article XVI, section 66(d), (ii) its remedial purpose to change the judicial rule that retirement benefits granted by public retirement systems can be reduced or eliminated by the Legislature at any time, and (iii) decisions from other jurisdictions protecting the method for calculating the compensation base, we construe "accrued benefits" as used in the Texas Constitution to include the method for determining the compensation base for calculating retirement benefits. Thus, the constitutional provision prohibits a change in the method of determining the compensation base of vested employees if such action reduces or impairs retirement benefits that the employee would have been eligible to receive on or before the effective date of the change. Accordingly, we conclude that the City's 12% cap on increases in earnings used to determine the compensation base for calculating retirement benefits contravenes article XVI, section 66(d) to the extent it reduces or impairs retirement benefits that vested employees would have received on or before the effective date of the change.[15]

---

[15]It is the City's particular chosen method for addressing the unfunded liability of its retirement system that we conclude may violate Texas Constitution article XVI, section 66(d). The City could have addressed the unfunded liability through other means that would not violate the constitutional provision. *See, e.g.*, TEXPERS Brief, *supra* note 4 at 3,13–14 (suggesting that the City has the discretion to restrict or limit the overtime hours that employees may work or the pay granted to employees).

## S U M M A R Y

Texas Constitution article XVI, section 66(d) generally prohibits a change in retirement benefits of a non-statewide retirement system that reduces or otherwise impairs "benefits accrued" by persons eligible to receive such benefits, without accumulating additional service, on or after the effective date of the change. Based on a review of the constitutional text and purpose and case law from other jurisdictions construing similar constitutional limits, we construe article XVI, section 66(d) to prohibit a change in the method of determining the compensation base of vested employees if such action reduces or impairs retirement benefits that the employee would have been eligible to receive before the effective date of the change. Accordingly, the City of Fort Worth's recently adopted 12% cap on increases in earnings used to determine the compensation base for calculating retirement benefits contravenes article XVI, section 66(d) to the extent it reduces or impairs retirement benefits that vested employees would have received before the effective date of the change.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee